811 So.2d 92 (2002)
David N. CUROLE, M.D.
v.
OCHSNER CLINIC, L.L.C., Richard Guthrie, M.D., Patrick Quinlan, M.D., Douglas Montgomery, M.D. and Teva Ostarly.
No. 2001-CA-1734.
Court of Appeal of Louisiana, Fourth Circuit.
February 20, 2002.
*93 William W. Edelman, Metairie, LA, for Plaintiff/Appellant.
Timothy H. Scott, James D. Morgan, Benton L. Toups, Fisher & Phillips LLP, New Orleans, LA, for Defendant/Appellee.
Court composed of Judge STEVEN R. PLOTKIN, Judge MIRIAM G. WALTZER, and Judge TERRI F. LOVE.
PLOTKIN, Judge.
Dr. David Curole appeals a trial court judgment granting defendants' exception of improper venue and transferring Dr. Curole's lawsuit to Jefferson Parish. Finding that venue is not proper in Orleans Parish, we affirm.
Dr. Curole was employed by defendant Ochsner Clinic, L.L.C., in Jefferson Parish from 1998 until May 2000, at which time Ochsner terminated his employment. Since then, Dr. Curole has continued to practice medicine in Jefferson Parish. Because of his termination at Ochsner, Dr. Curole filed a "Petition for Damages and Other Relief" in Orleans Parish against Ochsner, and several doctors affiliated with Ochsner, Dr. Richard Guthrie, Dr. Patrick Quinlan, Dr. Douglas Montgomery and Teva Osterly. Each of the defendants is domiciled in Jefferson Parish except Dr. Quinlan, who is domiciled in Orleans Parish. Dr. Quinlan was the Chief Executive Officer of Ochsner Clinic, L.L.C. at the time Dr. Curole was terminated. Dr. Curole is also domiciled in Orleans Parish.
The defendants filed a declinatory exception of improper venue in response to Dr. Curole's petition, seeking to have the case transferred to Jefferson Parish. Dr. Curole responded by amending his petition.
On June 25, 2001, the trial court granted the defendants' exception of improper venue and ordered the case transferred to Jefferson Parish. In her Reasons for *94 Judgment, the trial judge stated as follows: "Seeing no way Dr. Quinlan would be personally liable, this case belongs in Jefferson Parish." Dr. Curole appeals this judgment. In his only assignment of error, Dr. Curole argues that the trial court improperly found that his amended petition was insufficient to support a finding of personal liability against Dr. Quinlan. Dr. Curole's amended petition set forth the following allegations:
XI.
A. Richard Guthrie, M.D., Patrick Quinlan, M.D., Douglas Montgomery, M.D., and Teva Ostarly, acting jointly, solidarily and with a common plan, intention, goal and purpose, undertook or caused to be undertaken various acts which caused Plaintiff to suffer damages described in this Petition. More specifically, acting jointly, solidarily and with a common intention, plan, goal and purpose, these Defendants inflicted damages upon Plaintiff when these Defendants:
1. Intentionally, deliberately and tortiously interfered with the goodwill, business relationships, business contacts, and physician-patient relationships that existed between Plaintiff and his patients.
2. Intentionally, deliberately and tortiously converted and/or destroyed Plaintiffs goodwill, business relationships, business contracts, physician-patient relationships, personal, medical and business reputation, and business records, medical records and research records, including medical shadow files, research materials, OB Book and surgery book, so that they and others would reap financial benefits and rewards.
3. Caused Plaintiff effectively to be blacklisted and subjected to an economic boycott from coverage under the Ochsner Health Plan.
4. Engaged in unfair competition and unfair and/or deceptive business acts, the purpose of which was to convert Plaintiff's anticipated future stream of patient revenue into additional revenue for themselves and others.
5. Issued defamatory statements and/or created a defamatory impression with patients of Plaintiff that Plaintiff had abandoned his patients and had little care or concern for their medical care or welfare and otherwise disparaged and damaged Plaintiff's personal, medical and business reputation.
6. Instructed Plaintiff's staff at Ochsner Clinic to refrain from communication with Plaintiff, and failed to properly explain the reasons for abruptly evicting and terminating Plaintiff, which left Plaintiff's patients and physicians who customarily referred patients to Plaintiff, with the false, but reasonably expected belief that Plaintiff had engaged in grave and unprofessional actions.
7. Without the advance knowledge or consent of Plaintiff, and without explanation to the scheduled surgical patients of Plaintiff, canceled multiple surgeries that had been scheduled by Plaintiff and a number of his patients for May 26, 2000 and soon thereafter. This action was intended to and did cause damage to Plaintiffs reputation. This action further was intended to and did cause personal and professional embarrassment and humiliation to Plaintiff who, at the same time, was not even allowed access to the records that he needed in order to advise his patients that the scheduled surgeries had been canceled arbitrarily by Ochsner Clinic.
8. Appropriated trade secrets and seized or destroyed other confidential *95 information and records owned or developed by Plaintiff.
9. Intentionally and tortiously interfered with Plaintiff's prospective business advantage in terms of obtaining ongoing and future referrals from existing patients and from other physicians and from others in the community.
10. Interfered with the business relationships that plaintiff had with various research companies who had contracted with Plaintiff to undertake medical research.
11. Damaged the ability of Plaintiff to resume his practice of medicine through one or more other clinics, medical groups, corporations, hospitals or associations.
12. Disparaged the personal, professional and business reputation and goodwill of Plaintiff.
B. Defendants, Richard Guthrie, M.D., Patrick Quinlan, M.D., Douglas Montgomery, M.D., and Teva Ostarly were employees of Ochsner Clinic, L.L.C. at the time the events described hereinabove and elsewhere in the Petition occurred. By application of the doctrine of respondeat superior, Ochsner Clinic, L.L.C., as their employer, is solidarily liable with the individual defendants for the damages suffered by Plaintiff.
Dr. Curole argues that the above allegations of his amended petition are sufficient to make the personal liability of Dr. Quinlan an issue in the case, and that the allegations are also sufficient to support potential joint and solidary liability of all the defendants, making venue appropriate in Orleans Parish, which is a proper venue for a personal action against Dr. Quinlan. Specifically, Dr. Curole maintains that he properly alleged that Dr. Quinlan and the other individual defendants were active players in initiating and implementing the actions causing his damages. He further asserts that the trial court's reasoning resulted in a gratuitous rendition of judgment on an issue not raised by the defendants-that is, whether a cause or right of action exists against Dr. Quinlan.
Considering first whether the trial court rendered judgment on an exception not raised by the defendants, we find no merit in this contention. The trial court made a ruling only on the exception of improper venue and transferred the case to Jefferson Parish. See Favorite v. Ochsner, 537 So.2d 722 (La.App. 4th Cir.1988). In her Reasons for Judgment, the trial judge's reference to Dr. Quinlan's potential liability was a necessary corollary to her determination of the venue issue in this particular case.
On the venue issue, Dr. Curole argues both that venue is proper as to Dr. Quinlan in Orleans Parish and that the defendants are joint or solidary obligors, making venue in Orleans Parish proper for his lawsuit under La. C.C.P. art. 73, which provides in part:
A. An action against joint or solidary obligors may be brought in a parish of proper venue, under Article 42 only, as to any obligor who is made a defendant provided that an action for the recovery of damages for an offense or quasi-offense against joint or solidary obligors may be brought in the parish where the plaintiff is domiciled if the parish of plaintiff's domicile would be a parish of proper venue against any defendant under either article 76 or R.S. 13:3202.
The defendants argue that Dr. Quinlan's status as an officer of the defendant limited liability company prevents application of La. C.C.P. art. 73 because Dr. Curole did not allege facts sufficient to pierce the veil of the limited liability company, and *96 therefore make Dr. Quinlan personally liable.
Because exceptions to the general venue rules, like La. C.C.P. art. 73, are in derogation of a common law right, they must be strictly construed, and the party claiming the benefit of the exception must bring himself clearly within the exception. Albarado v. Union Pacific Railroad Company, 2000-2540 (La.App. 4 Cir. 4/25/01), 787 So.2d 431, 435, reversed on other grounds, XXXX-XXXX (La.9/14/01), 796 So.2d 666. A plaintiff defending against an exception of venue by invoking the provisions of La. C.C.P. art. 73 must allege sufficient facts to prove that the venue chosen is the proper venue for at least one of the alleged joint or solidary obligors. Spott v. Otis Elevator Company, 601 So.2d 1355, 1360 (La.1992). The plaintiff is also required to allege facts showing that the various defendants are in fact jointly or solidarily obligated. Strasner v. State, 99-1099 (La.App. 1 Cir. 6/23/00), 762 So.2d 1206, 1211, writ denied, 2000-2195 (La.10/27/00), 772 So.2d 125.
Although Dr. Curole alleged that the defendants were joint and solidary obligors, that they acted with a common plan, and perhaps even that the defendants were "active players," he did not set forth facts to support those allegations. Because the defendant on whom Dr. Curole seeks to premise joint and solidary liability, Dr. Quinlan, is an officer of a limited liability company, Dr. Curole must set forth more than cryptic phrases approved by courts in cases involving venue issues, which did not involve the potential liability of an officer of a limited liability company. Based upon Dr. Quinlan's status, the defendants readily distinguished the jurisprudence cited by Dr. Curole to support his position.
Moreover, because of Dr. Quinlan's status as an officer of an limited liability company, the underlying issue in this case encompasses more than simply a consideration of whether Dr. Curole's allegations were sufficient. If Dr. Quinlan cannot be found personally liable under any circumstances, then there can be no joint or solidary liability to support venue in Orleans Parish.
The Louisiana Limited Liability Company Law generally provides that a member is not personally liable, in his or her capacity as a member, for any debt, obligation, or liability of the limited liability company, and that the limitations on the liability of a member cause a Louisiana limited liability company to have the corporate characteristic of limited liability. Kalinka, The Louisiana Limited Liability Company Law After "Check-the-Box", 57 La. L.Rev. 715, 793 94 (1997); La.R.S. 12:1320. Furthermore, the only case applying Louisiana law allowing the veil of an limited liability company to be pierced in the same way that the view of a corporation is pierced is Hollowell v. Orleans Reg'l Hosp., 217 F.3d 379, 381 (5th Cir.2000). In Hollowell, the court held that a court may allow the piercing of the veil of a limited liability company based on a totality of the circumstances review.
Considering the Hollowell decision, we cannot categorically say that no circumstances exist that could result in a finding that Dr. Quinlan is personally liable for Dr. Curole's damages. Nevertheless, our review of Dr. Curole's allegations in light of Hollowell compels us to conclude that Dr. Curole failed to make allegations sufficient to require an inquiry into whether the limited liability veil should be pierced in this case.
In his amended petition, Dr. Curole failed to outline Dr. Quinlan's alleged role in any "common plan" that constituted intentional interference with contractual relationships, conversion, or defamation. In *97 fact, Dr. Curole failed to even suggest that Dr. Quinlan acted outside the scope of his authority or contrary to the interests of the limited liability company of which he was an officer. Dr. Curole's remaining causes of actionunfair competition, deceptive trade practices, and the appropriation of trade secretsdo not involve the liability of the individual defendants, but only the liability of Ochsner Clinic.
In his reply brief, Dr. Curole presents his only argument related to the central issue in this appeali.e., how a defendant's status as an officer of an limited liability company impacts proper venue. Dr. Curole argues that the limited liability veil of the Limited Liability Company Law is actually limited by section D of the statute. LSA-R.S. 12:1320 provides as follows:
A. The liability of members, managers, employees, or agents, as such, of a limited liability company organized and existing under this Chapter shall at all times be determined solely and exclusively by the provisions of this Chapter.
B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.
C. A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company.
D. Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.
(Emphasis added.)
Although we have found no Louisiana cases analyzing LSA-R.S 12:1320(D), we find no merit in Dr. Curole's arguments. Dr. Curole interprets the statute to ultimately remove the entire limited liability veil. To have meaning within the entire statute, the phrase "or other negligent or wrongful act by such person" must refer to acts done outside one's capacity as a member, manager, employee, or agent of the limited liability company. This, of course, brings us back to the insufficiency of Dr. Curole's allegations regarding Dr. Quinlan's actions. Having concluded that Dr. Curole's allegations were insufficient to support a finding of joint or solidary liability in part because Dr. Curole did not set forth facts showing that Dr. Quinlan acted outside of his capacity as an officer of the limited liability company in question, we find Dr. Curole's final argument unpersuasive.
Accordingly, we find that Dr. Curole failed to bring his case clearly within an exception to the venue provisions. He did not allege facts sufficient to show that Dr. Quinlan was jointly or solidarily liable with the other defendants. Accordingly, we affirm the judgment of the trial court granting the defendants' exception of improper venue and transferring the case to Jefferson Parish.
AFFIRMED.