ESTATE OF Marlene R. COUNTRYMAN, by and through, Carol Marie Taylor, Beverly Joyce Gartner, and Wanda Dale Countryman, Co–Executors, Estate of Dale Countryman, by and through Carol Marie Taylor, Beverly Joyce Gartner and Wanda Dale Countryman, Co–Executors, Estate of Marjorie A. Countryman, by and through Carol Marie Taylor, Beverly Joyce Gartner and Wanda Dale Countryman, Co–Executors, Estate of Edward Cunningham, by and through Keith Cunningham, Linda J. Cunningham and Carol Marie Taylor, Co–Executors, Estate of Dorothy Cunningham, by and through Keith Cunningham, Linda J. Cunningham and Carol Marie Taylor, Co–Executors, Beverly Joyce Gartner, Bruce Gartner, Beverly Joyce Gartner, as Parent and Next Friend of Amber Gartner, Adam Gartner and Trey Gartner, Minors, Greg and Barbara Dyer, as Parent and Next Friend of Andy Dyer and Gabe Dyer, Minors, Estate of Ashley Usovsky, by and through Carol

Marie Taylor, Beverly Joyce Gartner and Wanda Dale Countryman, Co–Executors, Conservatorship of Marlena Usovsky, a Minor by and through Carol Marie Taylor, Beverly Joyce Gartner and Wanda Dale Countryman, Co–Conservators, and Estate of Juanita Usovsky, by and through Gary L. Cameron, Executor, Appellants,

v.

FARMERS COOPERATIVE ASSOCIATION, Keota, Iowa a/k/a Keota Coop, Appellee.

No. 02–0906.

Supreme Court of Iowa.

May 12, 2004.

Donald G. Beattie of Beattie Law Firm, P.C., Des Moines, Christopher D. Spaulding of Berg, Rouse, Spaulding & Schmidt, P.L.C., Des Moines, and Myron Gookin, Fairfield, for appellants.

Richard S. Fry and Nancy J. Penner of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellee.

CADY, Justice.

This appeal requires us to decide if a member and manager of an Iowa limited liability company can be liable for torts based on managerial conduct. The district court granted summary judgment for the limited liability company. On our review, we conclude we have jurisdiction of the appeal and that the record did not support summary judgment. We reverse and remand for further proceedings.

## I. Background Facts and Proceedings.

In the afternoon of September 6, 1999, an explosion leveled the home of Jerry Usovsky (Usovsky) in Richland, Iowa. Tragically, seven people who had gathered in the home to celebrate the Labor Day holiday died from the explosion. Six others were injured, some seriously. The likely cause of the explosion was stray propane gas. The survivors and executors of the estates of those who died eventually filed a lawsuit seeking monetary damages against a host of defendants. The legal theories of recovery included negligence, breach of warranty, and strict liability. The defendants included Iowa Double Circle, L.C. (Double Circle) and Farmers Cooperative Association of Keota (Keota).

Double Circle is an Iowa limited liability company. It is a supplier of propane, and delivered propane to Usovsky's home prior to the explosion. Keota is one of two

members in Double Circle. It owns a ninety-five percent interest in the company. The other member is Farmland Industries, Inc. (Farmland Industries), a regional cooperative. Keota and Farmland Industries formed Double Circle in 1996 from an existing operation.

Keota is a farm cooperative that provides a variety of farm products and services to area farmers. It is a member of Farmland Industries and is managed by Dave Hopscheidt (Hopscheidt). The executive committee of Keota's board of directors serves as the board of directors of Double Circle, along with a representative of Farmland Industries. Keota provides managerial services to Double Circle, pursuant to a management agreement between Keota and Double Circle. Keota's duties under the agreement include "human resource and safety management." Hopscheidt oversees the daily operations of both Keota and Double Circle. However, Keota and Double Circle operate as separate entities and maintain separate finances.

Keota moved for summary judgment. It claimed the limited liability structure of Double Circle protected it from liability for any tortious acts of Double Circle based on its ownership interest and membership in Double Circle, or its management. It filed a supporting statement of undisputed facts with attached documents detailing the separate operations of Keota and Double Circle. The undisputed facts referred to an operating agreement providing that no member of the company would be liable for any tort solely by reason of being a member of the company. The attached documents also included a written agreement requiring Keota to provide management assistance and consulting services to Double Circle.

The plaintiffs resisted the motion by pointing to allegations in their petition indicating Keota participated in the claimed wrongdoing through the management decisions it made in consumer safety matters. For example, plaintiffs claimed Keota, through Hopscheidt, was negligent in failing to provide proper warnings to propane users, including the failure to warn users to install a gas detector, and to properly design the odorant added to the propane. Plaintiffs also sought to impose liability against Keota by piercing the corporate veil.

The district court granted summary judgment for Keota. It found plaintiffs failed to produce any facts to show that Keota engaged in conduct separate from its duties as director or manager of Double Circle. Consequently, it concluded Keota was protected as a matter of law from personal liability for claims of wrongful conduct attributable to Double Circle. It also concluded there was insufficient evidence as a matter of law to pierce the corporate veil.

The summary judgment ruling was entered on September 5, 2001. Following the ruling, the case proceeded against the remaining defendants. There were also numerous cross claims among the defendants, as well as a petition for intervention based on a claim for subrogation. The district court set a trial date of April 1, 2002. Ultimately, none of the claims were submitted at trial. Instead, plaintiffs settled their claims and filed dismissals, some with prejudice and some without prejudice. The dismissals were filed at various times prior to the trial date, and after the date of trial. Dismissals filed after the trial date included the dismissal of Lennox Industries, Inc. on May 14, 2002, and a dismissal of the Maytag Corporation (Maytag) on

June 10, 2002.[1] The district court never entered an order dismissing the claims of any of the plaintiffs to this appeal.

Plaintiffs filed their notice of appeal from the summary judgment ruling on June 12, 2002. They claimed the district court erred by finding that Keota was insulated from liability as a matter of law. Plaintiffs did not challenge the ruling based on the theory of piercing the corporate veil.

Keota filed a motion to dismiss the appeal. It claimed there was no appellate jurisdiction because a final order, judgment, or decree had never been entered by the district court. We ordered the issue submitted with the appeal.

## II. Jurisdiction.

 We first consider our jurisdiction to hear this appeal. Ordinarily, we have no jurisdiction over a case where no final judgment has been entered, unless permission has been obtained to appeal from an interlocutory order. *Johnson v. Iowa State Highway Comm'n*, 257 Iowa 810, 812, 134 N.W.2d 916, 917 (1965). In the case before us on appeal, the district court never entered a final order dismissing the claims of the plaintiffs to this appeal. Instead, the case was concluded in district court through a variety of voluntary dismissals filed by the plaintiffs as a result of various settlements between the parties. Yet, dismissals filed by the parties are not considered to be final orders for the purposes of appeal. *Ahls v. Sherwood/Div. of Harsco Corp.*, 473 N.W.2d 619, 622 (Iowa 1991). Consequently, Keota claims we have no jurisdiction.

We have previously adopted the doctrine of "pragmatic finality" to govern appeals

where the record reveals the claims before the district court were fully concluded without a final order or judgment entered. *Id.* at 622–23. We think this doctrine applies to render the plaintiffs' appeal timely in this case.

The appeal in this case is from an order that did not dispose of the entire case. When this summary judgment order was entered, the plaintiffs had the right to request an interlocutory appeal or wait to appeal once the entire case was completed. Iowa Rule of Appellate Procedure 6.5(3) provides:

> Notwithstanding these rules, an order disposing of an action as to fewer than all parties to the suit, even if their interests are severable, or finally disposing of fewer than all the issues in the suit, even if the issues are severable, may be appealed within the time for an appeal from the order, judgment, or decree finally disposing of the action as to remaining parties or issues.

In lieu of seeking interlocutory review, the plaintiffs in this case chose to wait until the conclusion of the case. Yet, the existence of a final judgment in this case became clouded because the claims of the parties were either settled or rendered moot in piecemeal fashion. Ultimately, the trial scheduled by the district court was not needed, and the various dismissals filed by the parties made it unnecessary for the court to bring the case to a conclusion by entering a final judgment. Clearly, these circumstances are the types that fall within the "pragmatic finality" doctrine. The vast number of parties and claims, however, made it difficult to pinpoint a pragmatic final judgment under

---

1. There was some confusion whether the Lennox Industries, Inc. dismissal filed with the district court was missing the signature of the attorney representing plaintiff Usovsky and the estate of Juanita Usovsky. Nevertheless, it is clear the parties resolved or settled all claims, except those resolved by the summary judgment.

the doctrine, which Keota seizes upon in an effort to reject its application.

Notwithstanding the complexity of the settlement process, the important inquiry under *Ahls* is for the record to provide sufficient assurance that the case was fully concluded and that there were no remaining issues to be tried by the district court. *See Ahls,* 473 N.W.2d at 622–23. In this case, the key event in this inquiry is the date the last remaining claim against a party was dismissed. Applying the *Ahls* standards, we are satisfied that the pragmatic finality for appeal purposes occurred when Maytag was dismissed. *Id.* The notice of appeal was filed within thirty days from this event. The order granting summary judgment was timely appealed and we deny the motion to dismiss.

### III. Scope of Review.

■■ We review a district court decision granting summary judgment for correction of errors of law. *Hynes v. Clay County Fair Ass'n,* 672 N.W.2d 764, 766 (Iowa 2003). In doing so, we view the evidence in the light most favorable to the nonmovant. *Virden v. Betts & Beer Constr. Co.,* 656 N.W.2d 805, 806–07 (Iowa 2003). Our task is to determine " 'whether a genuine issue of material fact exists and whether the law was correctly applied.' " *Adam v. Mount Pleasant Bank & Trust Co.,* 355 N.W.2d 868, 872 (Iowa 1984) (citations omitted).

### IV. Limited Liability Company.

The limited liability company, "LLC" as it is now known, is a hybrid business entity that is considered to have the attributes of a partnership for federal income tax purposes and the limited liability protections of a corporation. 5 Matthew G. Doré, *Iowa Practice (Business Organizations)* § 1.6, at 18–19 (2004) [hereinafter Doré]. As such, it provides for the operational advantages of a partnership by allowing the owners, called members, to participate in the management of the business. *See id.* § 1.6, at 20–21. Yet, the members and managers are protected from liability in the same manner shareholders, officers, and directors of a corporation are protected. *Id.* § 1.6, at 21.

The LLC first emerged as a business organization in 1977 and has now been adopted by statute in every state in the nation. Jerome P. Friedlander, II, *The Limited Liability Company: With a State–By–State Review* § 1:3 (1994 & Supp.1997). Iowa joined the trend in 1992 with the passage of the Iowa Limited Liability Company Act (ILLCA). 1992 Iowa Acts ch. 1151 (codified at Iowa Code sections 490A.100–1601 (2003)). The ILLCA, among other features, permits the owners or members to centralize management in one or more managers or reserve all management powers to themselves. *See* Iowa Code § 490A.702; *see also* 5 Doré § 1.6, at 20–21.

### V. Liability of Members or Mangers.

■ Although the tax treatment of an LLC has been largely resolved, the contours of the limited liability of an LLC are less certain. *See* Karin Schwindt, Note, *Limited Liability Companies: Issues in Member Liability,* 44 UCLA L.Rev. 1541, 1543–44 (1997). Only a few courts have specifically addressed the issue of tort liability. The ILLCA, however, describes the liability for members and managers of an LLC in four ways. It first addresses the general rule of limited liability for members and managers based on the acts or debts of the company:

Except as otherwise provided by this chapter or as expressly provided in the articles of organization, no member or manager of a limited liability company is

personally liable for the acts or debts of the limited liability company.

Iowa Code § 490A.601. The act then addresses the limited liability doctrine by first explaining the protection of members or managers from personal liability:

> Except as otherwise provided in this chapter or by written agreement of a member, a member or manager of a limited liability company is not personally liable solely by reason of being a member or manager of the limited liability company ... for any debt, obligation, or liability of the limited liability company, whether that liability or obligation arises in contract, tort, or otherwise.

*Id.* § 490A.603(1). Next, the act explains those circumstances that give rise to liability of members:

> A member of a limited liability company is personally liable under a judgment ... whether that liability or obligation arises in contract, tort, or otherwise, under the same or similar circumstances and to the same extent as a shareholder of a corporation may be personally liable for any debt, obligation, or liability of the corporation....

*Id.* § 490A.603(2). Finally, the same section of the act provides:

> Nothing in this section shall be construed to affect the liability of a member of a limited liability company to third parties for the member's participation in tortious conduct.

*Id.* § 490A.603(3). The rules of liability derived from these statutes have been summarized as follows:

> Sections 490A.601 and 490A.603 of the Act generally provide that a member or manager of a limited liability company is not personally liable for acts or debts of the company solely by reason of being a member or manager, except in the following situations: (1) the ILLCA ex-

pressly provides for the person's liability; (2) the articles of organization provide for the person's liability; (3) the person has agreed in writing to be personally liable; (4) the person participates in tortious conduct; or (5) a shareholder of a corporation would be personally liable in the same situation, except that the failure to hold meetings and related formalities shall not be considered.

5 Doré § 13.12, at 287–88 (footnotes omitted).

■ This law frames our resolution of the summary judgment issue presented on appeal. While liability of members and managers is limited, the statute clearly imposes liability when they participate in tortious conduct. *See* Iowa Code § 490A.603(3). This approach is compatible with the longstanding approach to liability in corporate settings, where, under general agency principles, corporate officers and directors can be liable for their torts even when committed in their capacity as an officer. *Haupt v. Miller,* 514 N.W.2d 905, 907 (Iowa 1994); 3A Jennifer L. Berger et al., *Fletcher Cyclopedia of the Law of Private Corporations* § 1135, at 200–01 (perm. ed. rev.vol.2002) [hereinafter *Fletcher*]. This approach has been explained as follows:

> Agency law generally, and Iowa law in particular, has long recognized that if a person commits a tort while acting for another person, the tortfeasor is personally liable for the tort, even if the person for whom he is acting is also vicariously liable for the same wrong. In other words, a person's status as an agent confers no immunity with respect to the person's own tort liability. Thus, if a member of a limited liability company injures another person while working in the course of the firm's business, the member is personally liable for that

harm along with the company, just as the member would be if he worked for a firm organized as a corporation, a partnership, or any other business form.

5 Doré § 13.12, at 288 (footnotes omitted).

■ Keota suggests that liability of an LLC member or manager for tortious conduct is limited to conduct committed outside the member or manager role. Yet, this approach is contrary to the corporate model and agency principles upon which the liability of LLC members and managers is based, and cannot be found in the language of the statute. We acknowledge that the "participation in tortious conduct" standard would not impose tort liability on a manager for merely performing a general administrative duty. *See Haupt,* 514 N.W.2d at 909. *See generally* 3A *Fletcher* §§ 1135, 1137, at 200–08, 209–19; William E. Knepper & Dan A. Bailey, *The Liability of Corporate Officers and Directors* § 6.07, at 6–14 to –15 (7th ed.2003). There must be some participation. *See* 18B Am. Jur.2d *Corporations* § 1877, at 724 (1985). The participation standard is consistent with the principle that members or managers are not liable based only on their status as members or managers. 3A *Fletcher* § 1137, at 209. Instead, liability is derived from individual activities. Yet, a manager who takes part in the commission of a tort is liable even when the manager acts on behalf of a corporation. *See Fletcher* §§ 1135, 1137, at 200–01, 209–13; *Haupt,* 514 N.W.2d at 909 (corporate officer liable for own tortious conduct where the officer acts under the corporate name or outside the corporate name). The ILLCA does not insulate a manager from liability for participation in tortious conduct merely because the conduct occurs within the scope and role as a manager.

Keota argues this view of limited liability places section 490A.603(1) at odds with section 490A.603(3). We disagree. The limit on liability created for members and managers of LLCs in section 490A.603(1) means members and managers are not liable for company torts "solely by reason of being a member or manager" of an LLC. Iowa Code § 490A.603(1). The phrase "solely by reason of" refers to liability based upon membership or management status. It does not distinguish between conduct of a member or manager that may be separate and independent from the member or management role. Thus, it is not inconsistent to protect a member or manager from vicarious liability, while imposing liability when the member or manager participates in a tort. Liability of members of an LLC is limited, but not to the extent claimed by Keota.

Keota relies on *Curole v. Ochsner Clinic, L.L.C.,* 811 So.2d 92, 96–97 (La.Ct.App. 2002), to support its position that owners and managers of an LLC are only liable for acts committed outside their capacity as a member or manager. While this was the conclusion reached in *Curole,* the case reveals that the Louisiana limited liability statute is substantially different from the Iowa statute. *Id.; see also* La.Rev.Stat. Ann. § 12:1320 (West 1994). The Louisiana statute does not contain the "solely by reason of" language of Iowa Code section 490A.603(1) and does not contain the "participation in tortious conduct" language of section 490A.603(3). *See* La.Rev.Stat. Ann. § 12.1320. Furthermore, other states that have discussed the topic of limited liability of LLC members and managers indicate that limited liability refers to liability based on the status of being a member or manager. *See Addy v. Myers,* 616 N.W.2d 359, 362 (N.D.2000); Rebecca J. Huss, *Revamping Veil Piercing for all Limited Liability Entities: Forcing the Common Law Doctrine Into the Statutory Age,* 70 U. Cin. L.Rev. 95, 101–02 (2001).

It is also important to recognize that this case is not about holding an officer, director, or shareholder of Keota personally liable for participating in tortious conduct. Plaintiffs have not sued individual members of Keota. Instead, the lawsuit filed by the plaintiffs seeks to hold Keota liable for participating in certain torts as the designated manager of an LLC pursuant to the agreement under which it directed Hopscheidt to act for Keota in performing management services of Double Circle. While members and managers of an LLC are generally not personally liable for the acts of an LLC, Keota must also be viewed as a separate "legal" person. This approach means that corporate liability for the acts of corporate agents can result as a matter of agency law. 5 Doré § 15.3, at 378–79. In discussing the general rule of limited liability of directors, officers, and employees for acts of a corporation, one author explains:

> A similar result obtains under the doctrine of respondeat superior when corporate employees commit a tort. *The corporation* is the employer and principal of such persons. Thus, the corporation may be held vicariously liable for its employees' torts, but the corporation's directors, officers, and employees (other than those employees who committed the tort) will not face any exposure. In short, for liability purposes the corporation is distinct not only from its shareholders, but also from its directors, officers, employees, and other agents.

5 Doré § 15.3, at 379. *See generally* 3A *Fletcher* ch. 54 (discussing corporate liability for torts of officers and agents); *Meyer v. Holley*, 537 U.S. 280, 285–86, 123 S.Ct. 824, 829, 154 L.Ed.2d 753, 761 (2003) (a corporation—not its owner or officer—is vicariously liable for torts of employees or agents). It is appropriate to apply this approach to cooperatives, such as Keota. *See* 18 Am.Jur.2d *Cooperative Associations* § 12, at 281 (1985) (a cooperative is essentially a corporation). Thus, Keota can participate in torts through the conduct of those individuals acting on behalf of Keota.

We conclude that Keota is not protected from liability if it participated in tortious conduct in performing its duties as manager of Double Circle. Consequently, the district court improperly granted summary judgment based on the limited liability provisions of section 490A.603(1) and 490A.603(3). A trial is necessary to develop the facts relating to allegations of Keota's participation in the alleged torts.[2]

## VI. Conclusion.

We reverse the summary judgment ruling of the district court on the issue of liability under chapter 490A, and remand for further proceedings. Plaintiffs did not appeal from that portion of the summary judgment ruling dismissing the claim for liability based on the theory of piercing the corporate veil, and that theory of recovery is not viable on remand.

**REVERSED AND REMANDED.**

All justices concur except CARTER, J., who takes no part.

---

**2.** In the absence of a record revealing the facts, we make no attempt to define the precise parameters of the participation theory of liability and the type of participation that gives rise to liability under the doctrine.