# IN THE SUPREME COURT OF IOWA

No. 19–1066

Submitted December 15, 2020—Filed March 19, 2021

**ROSALINDA VALLES,** Individually and on Behalf of **F.L.**, Her Minor Child,

      Appellant,

vs.

**ANDREW MUETING, JOSEPH LIEWER, NORTHWEST IOWA EMERGENCY PHYSICIANS, P.C., AMY WINGERT,** and **KELLY RYDER,**

      Appellees.

---

Appeal from the Iowa District Court for Woodbury County, Jeffrey L. Poulson, Judge.

The mother of an injured child appeals summary judgment rulings dismissing her medical malpractice negligence action against two physicians and barring the recovery of certain damages as well as various court rulings during trial in which the jury rendered a verdict in favor of other defendants. **APPEAL DISMISSED.**

Christensen, C.J., delivered the opinion of the court, in which Waterman, Mansfield, McDonald, and McDermott, JJ., joined. Appel, J., filed a dissenting opinion. Oxley, J., took no part in the consideration or decision of the case.

Jim Leventhal, Bruce L. Braley (argued), Brian N. Aleinikoff and Benjamin I. Sachs of Leventhal Puga Braley, P.C., Denver, Colorado, for appellant.

Nancy J. Penner (argued) of Shuttleworth & Ingersoll, Cedar Rapids; John C. Gray and Jeff W. Wright of Heidman Law Firm, L.L.P., Sioux City; Kevin J. Kuhn of Wheeler Trigg O'Donnell, LLP, Denver, Colorado; and Christine L. Conover and Carrie L. Thompson of Simmons, Perrine, Moyer & Bergman, PLC, Cedar Rapids, for appellees Mueting, Liewer, and Northwest Iowa Emergency Physicians, P.C.

William R. Settles (argued), Patrick G. Vipond, and Sarah M. Dempsey of Lamson Dugan & Murray LLP, Omaha, Nebraska, for appellees Wingert and Ryder.

**CHRISTENSEN, Chief Justice.**

A mother whose son developed severe, disabling injuries from bacterial meningitis brought an action for medical negligence against the physicians who treated her son and their employers. Various defendants entered settlement agreements with the mother and a few others were dismissed on summary judgment prior to trial. Two physicians and an employer of one of those physicians went to trial. A jury issued a verdict in their favor, finding the remaining physicians were not negligent.

The mother appealed and presents several issues on appeal. In addition to contesting these issues on the merits, the defendants maintain the appeal is untimely and should be dismissed under Iowa Rule of Appellate Procedure 6.101(1)(*b*) because the mother failed to timely file her notice of appeal. Upon our review, we conclude the appeal is untimely. Therefore, we lack jurisdiction to consider the appeal and must dismiss it.

## I. Background Facts and Proceedings.

On April 3, 2015, Rosalinda Valles took her eleven-year-old son, F.L., to the emergency room at Mercy Medical Center-Sioux City (Mercy) because he had a fever, cough, and chills. F.L. returned to the emergency room two days later, on April 5, where he presented with similar complaints. By this time, the results of F.L.'s April 3 nasal swab were available and showed F.L. was positive for Influenza B. F.L. was admitted to the hospital for further observation, and he remained hospitalized in this unit until his condition deteriorated on April 8.

On April 8, F.L. became unresponsive to verbal stimuli and was transferred to the intensive care unit, where a physician performed a lumbar puncture. When F.L.'s lumbar puncture revealed an "elevated white count and decreased glucose concentration, [and] presence of Bandemia was indicated at 49%," F.L. was transported by airlift at

9:40 a.m. to the pediatric intensive care unit at the Children's Hospital and Medical Center in Omaha, Nebraska. F.L. was admitted with "meningitis/bacteremia." F.L. continues to suffer severe and debilitating injuries and will for the remainder of his life.

On January 28, 2016, Valles, individually and on behalf of her minor son, F.L., filed this lawsuit. Valles amended her petition a number of times. In the final petition, Valles sued Mercy and the following physicians for medical negligence and parental loss of consortium: Jaime Dodge, Leah Johnson, Joseph Liewer, Thomas Morgan, Andrew Mueting, Jesse Nieuwenhuis, Rex Rundquist, Kelly Ryder, Said Hasib Sana, Aruntha Swampillai, and Amy Wingert. She also asserted direct and vicarious liability claims against Mercy; Northwest Iowa Emergency Physicians, P.C.; Siouxland Medical Education Foundation; and Prairie Pediatrics & Adolescent Clinic, P.C., doing business as Prairie Pediatrics, P.C. Between the filing of this lawsuit on January 28 and the commencement of trial on October 30, 2018, there were numerous motions, pretrial hearings, amended petitions, and settlements. The only remaining claims by the time of trial were those against Dr. Liewer, Dr. Mueting, and Northwest Iowa Emergency Physicians, P.C. (Defendants).[1]

The jury trial commenced on October 30 and spanned several weeks. On November 21, the jury returned a verdict in favor of Defendants, finding they were not negligent. Since then, Valles has filed various motions, dismissals, requests, and appeals. We discuss those relevant to this appeal.

After trial, Valles filed a motion to extend the time for posttrial filings, which the district court granted on December 6 to extend the

---

[1]Northwest Iowa Emergency Physicians, P.C. is Dr. Liewer's employer.

deadlines for filing bills of exceptions and posttrial motions until December 21. On December 20, Valles filed a motion for entry of order nunc pro tunc asking the district court to amend its November 21 order of judgment to identify specifically the defendants who were exonerated by the jury as opposed to settling defendants who were also in the case caption. On January 25, 2019, the district court entered an order amending the judgment to make this clarification.

On December 20, 2018, Valles also filed her first notice of appeal in our court

> from the order and judgment entered in this case on the 21st day of November, 2018, from the "Enlarged Finding on Plaintiff's Motion for Directed Verdict on Comparative Negligence of Mercy Nurses" which was later filed in this case on the 5th day of December, 2018, and from all adverse rulings and orders inhering therein.

Valles's notice explained that she did

> not believe that this case is ripe for an appeal because stipulations and orders of dismissal have not yet been entered with respect to several of the settling defendants . . . . Therefore, the order and judgment entered on the 21st day of November, 2018, was **not actually dispositive of the entire case.** In an abundance of caution, however, Plaintiff files this **protective notice of appeal.**

(Emphasis added.)

Before we entered any rulings on Valles's first notice of appeal, Valles filed a bill of exceptions in the district court on December 21, which Defendants resisted. The district court issued its order denying this bill on January 25, 2019, explaining it no longer possessed jurisdiction to address Valles's request because Valles had filed her notice of appeal the day before filing her bill of exceptions.

We entered an order on February 5, requiring Valles to "file a statement concerning whether this court has jurisdiction" to hear that

appeal and welcoming responses from Defendants. In response, Valles asked us to dismiss that appeal without prejudice and stated it "should not be considered an application for interlocutory review." Defendants did not resist dismissal of the appeal, but they maintained there was no authority for dismissal without prejudice and "reserve[d] all argument and positions in any subsequent appeal . . . , including as to its timeliness." On March 14, we issued an order treating Valles's first notice of appeal as an application for interlocutory appeal, which we denied. Procedendo issued on April 10.

On April 15, Valles filed a dismissal of settling defendant Mercy in district court. On April 30, she dismissed the remaining settling defendants. On May 28, Valles filed a motion requesting an order entering final judgment, noting the district court had entered judgment in favor of Dr. Liewer, Dr. Mueting, and Northwest Iowa Emergency Physicians, P.C., and all other defendants had been otherwise dismissed from the case. The district court entered Valles's proposed order the next day. Valles filed her second notice of appeal on June 24, and we retained the appeal. The only defendants who are parties to this appeal are the three defendants who went to trial, Dr. Liewer, Dr. Mueting, and Northwest Iowa Emergency Physicians, P.C., and two defendants who were dismissed by summary judgment prior to trial, Dr. Ryder and Dr. Wingert.

## II. Jurisdiction.

We must deal with a threshold matter before addressing any of Valles's claims on appeal, as all defendants on appeal contend Valles's appeal is untimely. If they are correct, we lack jurisdiction to consider Valles's appeal. *See Milks v. Iowa Oto-Head & Neck Specialist, P.C.*, 519 N.W.2d 801, 803 (Iowa 1994) ("The timeliness of a notice of appeal is mandatory and jurisdictional . . . ."). "[W]ant of jurisdiction of the subject

matter may be taken advantage of at any stage of the proceedings" and "need not be pled." *Lloyd v. State*, 251 N.W.2d 551, 556 (Iowa 1977).

All defendants on appeal maintain we have no jurisdiction to consider Valles's appeal of the district court's summary judgment rulings pertaining to them and challenges to the district court's decisions during trial because the appeal is untimely. They contend the district court's November 21, 2018 judgment in favor of Defendants following the jury's November 21 verdict was the final, appealable order pertaining to them, and Valles failed to file a proper notice of appeal within thirty days of that judgment. Alternatively, they contend that Valles's April 30, 2019, voluntary dismissal of the remaining settling defendants triggered the thirty-day appeal deadline because it eliminated the only remaining defendants from the case. Again, they contend that Valles failed to file a timely notice of appeal after April 30.

Under our appellate rules of procedure, "[a] notice of appeal must be filed within 30 days after the filing of the final order or judgment." Iowa R. App. P. 6.101(1)(*b*).

> A final judgment or decision is one that finally adjudicates the rights of the parties. It must put it beyond the power of the court which made it to place the parties in their original position. A ruling or order is interlocutory if it is not finally decisive of the case.

*In re M.W.*, 894 N.W.2d 526, 532 (Iowa 2017) (quoting *Johnson v. Iowa State Highway Comm'n*, 257 Iowa 810, 812, 134 N.W.2d 916, 918 (1965)). In cases like this involving partial determinations made by a district court, rule 6.101(1)(*d*) provides the following additional means of appeal:

> A final order dismissing some, but not all, of the parties or disposing of some, but not all, of the issues in an action may be appealed within the time for appealing from the judgment that finally disposes of all remaining parties and issues to an action, even if the parties' interests or the issues are severable.

Iowa R. App. P. 6.101(1)(*d*).

This rule promotes the "long followed . . . general policy against piecemeal appeals." *In re T.R.*, 705 N.W.2d 6, 10 (Iowa 2005); *cf. Ahls v. Sherwood/Div. of Harsco Corp.*, 473 N.W.2d 619, 623 (Iowa 1991) ("Recognition of finality here, moreover, will not offend our policy against piecemeal appeals because there are no remaining issues to be tried or appealed."). Here, the district court's summary judgment rulings in favor of Dr. Ryder and Dr. Wingert and its entry of judgment in the remaining Defendants' favor following trial only disposed of some, but not all, of the issues because other defendants remained in the action pending probate court approval of their proposed settlements with Valles. The issues pertaining to the defendants in this appeal are severable from the interests of the settling defendants, so Valles had the option to pursue an interlocutory appeal or wait until the final disposition of the case with respect to all issues and parties. *See Est. of Countryman v. Farmers Coop. Ass'n*, 679 N.W.2d 598, 601 (Iowa 2004). Consequently, Valles's first notice of appeal following the November 21, 2018 entry of judgment was an interlocutory appeal so long as other parties remained in the case. *See id.* at 602 ("In this case, the key event [in determining finality] is the date the last remaining claim against a party was dismissed."); *IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 627 (Iowa 2000) ("[A] ruling is interlocutory if it is not finally decisive of the case." (quoting *Recker v. Gustafson*, 271 N.W.2d 738, 739 (Iowa 1978))).

After we denied Valles's application for interlocutory appeal from the November 21 judgment, Valles filed a dismissal of settling defendant Mercy on April 15, 2019, and a dismissal of the remaining settling defendants on April 30. Then, on May 28, Valles filed a motion in district court requesting an order entering final judgment, noting the district court had entered

judgment in favor of Defendants and all other defendants had been dismissed from the case. The district court entered Valles's proposed order the next day, May 29, and Valles filed her notice of appeal on June 24—fifty-five days after she dismissed the final settling defendants but within thirty days of the May 29 district court order. Ultimately, the issue of whether the April 30 dismissal or May 29 order constitutes the dispositive date of finality for appeal purposes hinges on whether the April 30 dismissal was self-executing or whether Valles needed court approval to dismiss the remaining parties. *Est. of Countryman*, 679 N.W.2d at 601.

> Under rule 1.943 of our rules of civil procedure,
>
> [a] party may, without order of court, dismiss that party's own petition, counterclaim, cross-claim, cross-petition or petition of intervention, at any time up until ten days before the trial is scheduled to begin.

Iowa R. Civ. P. 1.943. There was no trial date set for the remaining parties, so Valles had the absolute right to dismiss the settling defendants when she did without court approval. Thus, her April 30 dismissal was self-executing and marked the date of finality for appeal purposes.

Nothing remained pending in this case after Valles dismissed the last of the remaining defendants on April 30. Yet, Valles waited until June 24—fifty-five days—to file her notice of appeal. Because Valles failed to file her notice of appeal within thirty days of the resolution of the last remaining issues before the district court, her appeal is untimely. *See Robinson v. Safeway Ins.*, No. 1–09–0361, 2011 WL 9673430, at *5 (Ill. Ct. App. Dec. 2, 2011) ("[I]t is well established that when a plaintiff voluntarily dismisses the remaining counts of a complaint, all previously entered orders disposing of other counts in that complaint become immediately final and appealable."); *Denham v. City of New Carlisle*, 716 N.E.2d 184, 187 (Ohio 1999) ("[W]e hold that a trial court's decision

granting summary judgment based on immunity for one of several defendants in a civil action becomes a final appealable order when the plaintiff voluntarily dismisses the remaining parties to the suit pursuant to [the rule governing voluntary dismissal of the remaining parties to the suit]."); 15A Charles Alan Wright et al., *Federal Practice and Procedure* § 3914, at 487–88 (2d ed. 1991) (discussing the concept of cumulative finality); *cf. Christ's Legacy Church v. Trinity Grp. Architects, Inc.*, 417 P.3d 1223, 1226 (Okla. Civ. App. 2018) ("Indeed, if some claims (or parties) are not adjudicated in an interlocutory, partial summary judgment ruling, a voluntary dismissal of the remaining claims (or parties) is sufficient to render the partial summary judgment ruling final and reviewable, and the filing of the dismissal triggers the commencement of appeal time."). Valles cannot rely on her May 28 motion requesting the district court enter a superfluous order of final judgment dismissing defendants who had already been dismissed to sidestep our appellate deadline.

The dissent argues that that when Valles filed her April 30 dismissal of the remaining defendants under rule 1.943, it was not self-executing because it was not filed "at any time up until ten days before the trial is scheduled to begin." We do not believe this reading of rule 1.943 is plausible. A trial had occurred, but it did not involve these defendants. Thus, the dismissal was filed "at any time up until ten days before the trial is scheduled to begin" *as to these defendants*. Notably, Valles herself did not believe she needed court permission to dismiss these defendants. What she filed on April 30 was a unilateral "Dismiss with Prejudice" that did not ask for court approval. For the aforementioned reasons, we lack the jurisdiction to consider Valles's untimely appeal and affirm the judgment of the district court.

### III.  Conclusion.

For the foregoing reasons, we dismiss this appeal.

**APPEAL DISMISSED.**

Mansfield, Waterman, McDonald, and McDermott, JJ., join this opinion.  Appel, J., files a dissenting opinion.  Oxley, J., takes no part.

**APPEL, Justice (dissenting).**

I respectfully dissent. In my view, the majority misinterprets the text of the relevant rule, fails to recognize its underlying purpose, and comes up with unpersuasive policy reasons to rewrite the text and reformulate the underlying policy.

The live wire jurisdictional issue in this case is whether the filing of the voluntary motions to dismiss on April 30, 2019, were self-executing or whether they required judicial approval before becoming final. If the voluntary dismissals were self-executing, the plaintiff's appeal on June 28 fifty-five days later would be time-barred. If, however, the voluntary dismissals required leave of court, the appeal would be timely.

At early common law, a plaintiff, in some instances, could take a nonsuit even after a verdict if the plaintiff "did not like his damages." Note, *The Right of a Plaintiff to Take a Voluntary Nonsuit or to Dismiss His Action Without Prejudice*, 37 Va. L. Rev. 969, 970 (1951) [hereinafter Lipkin, *Voluntary Nonsuit*]. This regime provided the plaintiff with an advantage as the plaintiff could continue suing until he was satisfied with the damage recovery. *Id.* Later, the common law limited voluntary dismissals to the period prior to a verdict. *Id.* Modern statutes and rules have been put in place to regulate a plaintiff's ability to engage in voluntary dismissals of lawsuits. *Id.*

The relevant rule is Iowa Rule of Civil Procedure 1.943. That rule provides, in relevant part: "[a] party may, without order of court, dismiss that party's own petition . . . at any time up until *ten days before the trial is scheduled* to begin. *Thereafter* a party may dismiss an action . . . only by [leave] of the court." *Id.* (emphasis added).

A trial in this matter occurred with a jury verdict on November 21, 2018. Prior to trial, however, the plaintiffs had reached a settlement with some defendants that was subject to approval in probate court. On December 20, the plaintiffs filed a motion with the district court requesting that an order be entered declaring that the jury's verdict was only a final judgment as to the nonsettling defendants but not a judgment in favor of the settling defendants. On January 24, 2019, the nonsettling defendants responded that they did not object to the entry of an order making the clarification. On January 25, the district court entered the requested order making clear that the jury's verdict was not a final judgment against the settling defendants.

Ultimately, Valles was able to complete the settlements. On April 15, Valles filed a motion to dismiss Mercy Health Services–Iowa, Corporation. On April 30, Valles dismissed the remaining parties.

On May 28, Valles asked the district court to enter a final order and judgment in the case. On May 29, the district court complied. On June 24, a notice of appeal was filed.

The critical issue in this case is whether the voluntary dismissals filed on April 15 and April 30 were self-executing. In other words, did the dismissals take immediate effect and constitute a final judgment upon their filing with the clerk of court without the need for judicial approval. If they were self-executing, the plaintiff's notice of appeal on June 24 was outside the thirty-day window, and this court lacks jurisdiction to hear the cause. If the voluntary dismissals were not self-executing, and judicial action was required before they became effective, the June 24 notice of appeal would be timely.

The general rule is clear enough. A voluntary dismissal filed more than ten days before trial is self-executing and becomes final on the day it

is filed. Iowa R. Civ. P. 1.943. A voluntary dismissal filed within "ten days before the trial is scheduled to begin" is not self-executing and requires approval by the court. *Id.* The rule goes on to state that "[t]hereafter," leave of court is required for voluntary dismissals. *Id.*

The language "up until ten days before the trial is scheduled," when coupled with the "thereafter" clause, establishes a finish line, not a goalpost. Were the voluntary dismissals filed within the rule's deadline in this case prior to the middle of November 2018, they would be self-executing final dismissals and not require further court action.

The "up until ten days" language creates a window of opportunity for a plaintiff to voluntarily dismiss the claim without prejudice. The window opens with the filing of the complaint, and it closes ten days prior to a scheduled trial. Under the rule, the window for voluntary dismissals does not open again. But under the majority view, there is the opening of a second window not contained in the rule.

Aside from the lack of textual support for the second window, it makes sense for the district court to retain jurisdiction over the matter. Historically, the purpose of regulating nonsuits was to prevent plaintiffs from engaging in late dismissals. Lipkin, *Voluntary Nonsuit,* 37 Va. L. Rev. at 970. The modern regulations were thus tailored to prevent the result advocated by the majority, namely, unregulated voluntary dismissal by the plaintiff after trial. *Id.* In addition, one purpose of maintaining judicial control over late filed dismissals is to allow the district court to consider whether to insist that dismissal is made with prejudice or to assess costs and fees against a party for engaging in unnecessary and prolonged litigation. *See Manshack v. Sw. Elec. Power Co.,* 915 F.2d 172, 174 (5th Cir. 1990) (construing parallel provisions of Federal Rule of Civil Procedure 41(a)(2)); *see also* 9 Charles A. Wright & Arthur R. Miller,

*Federal Practice and Procedure* § 2364, at 556 (4th ed. 2020) (stating the purpose of rule 41(a)(2) is "to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions") (quoting *Alamance Indus., Inc. v. Filene's*, 291 F.2d 142, 146 (1st Cir. 1961)).

The majority seeks to enlist in support of its position the doctrine of pragmatic finality. But the leading pragmatic finality case cuts dead against the majority position. As will be seen, the doctrine of pragmatic finality is an ad hoc exception to the ordinary finality rule designed to encourage consideration of appeals on the merits. It cannot be used to defeat Iowa Rule of Civil Procedure 1.943 or our ordinary approach to finality.

The seminal case of pragmatic finality cited by the majority is *Ahls v. Sherwood/Division of Harsco Corp.*, 473 N.W.2d 619 (Iowa 1991). In *Ahls*, one party was dismissed early in the litigation for want of personal jurisdiction on December 23, 1987. *Id.* at 620–21. The remaining parties then settled on October 3, 1989, the day set for trial. *Id.* at 621. On the same day, the district court entered an order which noted the settlements and assessed a late penalty. *Id.* Dismissal documents implementing the settlement were filed on November 15. *Id.* On November 27, a party sought to appeal the district court's December 28 dismissal order. *Id.* at 621, 624.

The fighting issues in *Ahls* was whether the litigation were twofold. First, was the October 3 order acknowledging that the case had been settled a final order. *Id.* at 621–22. Second, were the dismissal documents filed by the parties on November 15 a final order for purposes of appeal. *Id.* at 622–23.

The *Ahls* court dispatched the first claim quickly, noting that although the district court's order announced the settlement, it did not amount to a final order of the court. *Id.* at 622. The court then turned to whether the filing of the November 15 dismissals by the parties was a final, and therefore appealable, order. *Id.*

The *Ahls* court said no. *Id.* The *Ahls* court noted that that the filing of the voluntary dismissals "was not an action by the court at all." *Id.* Quoting a federal district court case, the *Ahls* court declared that "[t]he distinction is obvious between a final decree and a stipulation upon which such a decree may be entered." *Id.* (alteration in original) (quoting *Roemer v. Neumann*, 26 F. 332, 334 (C.C.S.D.N.Y. 1886)). The court went on to emphasize that "while [the] case was fully concluded, there was no formal order which may be considered a final order for purposes of appeal." *Id.* The pronouncement in *Ahls* is completely consistent with the position of the plaintiffs in this case.

But that was not the end of the *Ahls* matter. The *Ahls* court then considered the doctrine of pragmatic finality that had been applied in federal courts. *Id.* at 623. Quoting *Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548, 554 (9th Cir. 1986), the *Ahls* court noted that a court "may treat an interlocutory order as a final order when that portion of the case that remained in the district court has subsequently been terminated." *Ahls*, 473 N.W.2d at 623.

The *Ahls* court noted that "there are problems inherent in recognizing ad hoc exceptions to our finality rule." *Id.* The *Ahls* court quoted a dissent in a federal case which stated:

> [T]he newly created exception to finality replaces with large elements of uncertain administration the previously certain and efficient rule of finality . . . The need for clear and easily administered rules as to the threshold adjective issue of

reviewability overrides any values of flexible case-by-case administration.

*Id.* (quoting *Newpark Shipbuilding & Repair, Inc., v. Roundtree*, 698 F.2d 743, 757 (5th Cir. 1983) (Tate, J., dissenting)).

Thus, the *Ahls* court was not overturning the general rule that a court order was required for a final order. Instead, it permitted an ad hoc exception to permit appeal of an interlocutory order in the interest of fairness to the parties. In this case, the majority turns the shield of the ad hoc exception designed to promote fairness to the parties and permit resolution of a case on the merits into a sword that eviscerates the ordinary rule.

The majority then cites a couple of authorities for the proposition that when a voluntary dismissal occurs for all remaining parties, prior interlocutory appeals become final. *See Robinson v. Safeway Ins.*, No. 1–09–0361, 2011 WL 9673430, at *5 (Ill. App. Ct. Dec. 2, 2011); *Denham v. City of New Carlisle*, 716 N.E.2d 184, 187 (Ohio 1999); *Christ's Legacy Church v. Trinity Grp. Architects, Inc.*, 417 P.3d 1223, 1226 (Okla. Civ. App. 2018). It is blackletter law that once voluntary dismissals are final, the prior interlocutory orders in a case also become final. But the majority has not cited—and I have not found *any*—passage in these cases that considers the question of when a voluntary settlement is self-executing or when it requires judicial approval under a rule like Iowa Rule of Civil Procedure 1.943. These cases are the proverbial boxed canyon that lead nowhere on the issue at hand.

The majority drives to its result by airbrushing language out of rule 1.943. The majority provides a partial block quote of the rule:

> [a] party may, without order of court, dismiss that party's own petition, counterclaim, cross-claim, cross-petition or petition of intervention, at any time up until ten days before the trial is scheduled to begin.

The majority, however, does not present the relevant part of the next important sentence of the rule. Here is the text of the rule with the omitted passage restored:

> [a] party may, without order of court, dismiss that party's own petition, counterclaim, cross-claim, cross-petition or petition of intervention, at any time up until ten days before the trial is scheduled to begin. *Thereafter a party may dismiss an action or that party's claim therein only by consent of the court which may impose such terms or conditions as it deems proper.*

Iowa R. Civ. P. 1.943 (emphasis added). The plaintiff's dismissal occurred after the expiration of ten days prior to a "scheduled" trial. And the plaintiff's dismissal occurred "thereafter" the expiration of the ten-day period prior to a "scheduled" trial. If we were to follow the text of the "scheduled" clause and the "thereafter" clause, court approval would be required for the voluntary dismissals at issue here.

The majority attempts to make hay out of the fact that the April 30 dismissal did not expressly seek court approval. The majority chooses to read the plaintiff's mind based on what was not said, ordinarily a dubious enterprise. In any event, I see nothing in rule 1.943 that makes the requirement of the rule dependent on a party's explicit ask.

And, like its partial presentation of the text of the rule, the majority gives a partial history. After the district court took no action on the April 30 voluntary dismissal, on May 28, the plaintiffs filed a motion requesting that the district court take appropriate action under rule 1.943. And the district court entered the requested order on May 29. If it was important to interpret what the plaintiff's omission meant on April 30, it should be informed by what was said in the later filing. In my view, however, the subjective inquiry adds nothing to the resolution of this case and in future cases will hopefully only be regarded as an odd observation

that does not establish a precedent for subjective interpretation of our rules of procedure.

Because of the text of Iowa Rule of Civil Procedure 1.943, the applicable underlying policies, and the applicable case law, I would hold that this court has jurisdiction to hear the appeal.