A93A1835, A93A1836. FULTON PAPER COMPANY, INC.
v. REEVES (two cases).
(441 SE2d 881)

SMITH, Judge.

In this action on account, the trial court denied appellant Fulton Paper Company's motion for summary judgment and granted appellee Bruce D. Reeves' cross motion. Fulton Paper Company appeals.

*Case No. A93A1836*

1. Fulton Paper Company filed its motion for summary judgment on September 18, 1992. Reeves responded by cross motion on October 19, 1992, which was served upon Fulton Paper Company "by depositing same in the United States Mail with sufficient postage thereon, and properly addressed to" Reeves's counsel. The trial court entered summary judgment in favor of Reeves on November 20, 1992. Fulton Paper Company served its reply brief on November 23, 1992, and filed it with the court below on November 25, 1992. On December 9, 1992, Fulton Paper Company filed a motion for reconsideration and requested expedited treatment, claiming that the court's judgment was entered prematurely and that its reply brief was timely served.[1] A hearing was held on December 16, 1992, and the trial court agreed to reconsider based on the premature entry of the first order. After hearing the matter a second time, the trial court requested that Reeves's attorney prepare a proposed order setting aside the order of November 20, 1992, and again granting summary judgment to Reeves for the reasons stated from the bench. Counsel for Reeves confirmed that he

---

[1] See OCGA § 9-11-6 (e). Fulton Paper Company asserts that since it had 33 days, rather that 30, to respond to Reeves's cross motion, and since the 33rd day fell on a weekend, its final day to properly serve Reeves with its reply was Monday, November 23, 1992 (30 days plus three days plus Sunday and Monday). See OCGA §§ 9-11-6 (a); 1-3-1. While it is true that Uniform State Court Rules must give way to the Civil Practice Act whenever a conflict exists, Fulton Paper Company does not disclose its justification under the CPA for not also *filing* its response with the state court by November 23, 1992. State Court Rule 6.2 provides that "each party opposing a motion shall serve *and file* a response" not later than 30 days after service of the motion. However, this issue is not presented for review.

would have the order ready for the judge's signature "today or tomorrow." Fulton Paper Company filed its notice of appeal from the November 20, 1992 order on December 21, 1992 and costs were paid. This became Case No. A93A1835 in this court.

On December 31, 1992, the state court entered its written order setting aside its previous summary judgment order, reopening the case to consider Fulton Paper Company's additional arguments, and again entering summary judgment in favor of Reeves and against Fulton Paper Company. Fulton Paper Company filed its notice of appeal from the December 31 order on January 8, 1993. This became Case No. A93A1836 in this court, and the substantive issues in it are the same as those in Case No. A93A1835.

OCGA § 5-6-46 provides that "[i]n civil cases, the notice of appeal filed as provided in Code Sections 5-6-37 and 5-6-38 shall serve as supersedeas upon payment of all costs in the trial court by the appellant." Since supersedeas was effective under OCGA § 5-6-46 prior to December 31, 1992, the court below lacked jurisdiction to enter the order purporting to vacate the prior order of November 20, 1992. See generally *Anaya v. Brooks Auto Parts*, 208 Ga. App. 491 (430 SE2d 825) (1993); *Philips Broadcast Equip. Corp. v. Production 70's*, 133 Ga. App. 765, 766 (1) (213 SE2d 35) (1975). Since it presents nothing for review, Case No. A93A1836 is therefore dismissed.

Since Fulton Paper Company does not enumerate as error the premature entry of summary judgment on November 20, 1992, we do not address the issue here. See *Majeske v. Jekyll Island State Park Auth.*, 209 Ga. App. 118, 120 (2) (433 SE2d 304) (1993). We note, however, that the issues presented in the reply brief were considered by the trial court on motion for reconsideration, and the transcript of the reconsideration hearing unambiguously shows that the court was not persuaded by those additional arguments.

*Case No. A93A1835*

2. Proceeding to the merits, the facts are not in dispute. Reeves is president of May Fresh Services, Inc., a Georgia corporation. May Fresh was administratively dissolved pursuant to OCGA §§ 14-2-1420 and 14-2-1421 on January 9, 1992, and as a consequence, it continued to exist as a corporate entity but was not authorized to "carry on any business except that necessary to wind up and liquidate its business and affairs." OCGA § 14-2-1421 (c); *The Gas Pump v. Gen. Cinema Beverages &c.*, 263 Ga. 583 (436 SE2d 207) (1993). Nevertheless, Reeves continued to do business as usual on behalf of May Fresh. From May 6 through July 26, 1992, May Fresh purchased $26,892.53 worth of wholesale paper goods on its account with Fulton Paper Company. It is undisputed that these purchases by May Fresh were

inconsistent with the winding up of May Fresh's affairs.

On July 20, 1992, Fulton Paper Company brought suit against "Bruce D. Reeves d/b/a May Fresh Services, Inc.," for payment of the obligations incurred during that period. Reeves answered, conceding liability on behalf of May Fresh, which was not made a party to this lawsuit, but denying individual liability. On August 4, 1992, May Fresh applied for reinstatement of its status prior to dissolution pursuant to OCGA § 14-2-1422. A certificate of reinstatement was issued on August 6, 1992. Cross motions for summary judgment were filed. The trial court found that Reeves was not personally liable to Fulton Paper Company as a result of May Fresh's administrative dissolution, and this appeal followed. We affirm.

The trial court found that OCGA § 14-2-1422 (c) mandated that May Fresh be treated as an existing, bona fide corporation for purposes of the parties' cross motions for summary judgment. That Code section provides that "[w]hen the reinstatement [of a corporation administratively dissolved under OCGA § 14-2-1421] is effective, it relates back to and takes effect as of the effective date of the administrative dissolution and the corporation resumes carrying on its business as if the administrative dissolution had never occurred."[2]

We reach the same conclusion without need to address the question of reinstatement. We instead base our conclusion on the administrative dissolution provision itself, which provides in pertinent part that "[a] corporation administratively dissolved *continues its corporate existence* but may not carry on any business except that necessary to wind up and liquidate its business and affairs under Code Section 14-2-1405." (Emphasis supplied.) OCGA § 14-2-1421 (c). A plain reading of this Code section reveals that even after "dissolution"[3] May Fresh continued to exist as a corporate entity and that it was likewise authorized to carry on business, albeit for very limited purposes. This is true regardless of whether May Fresh was ultimately

---

[2] The source of OCGA § 14-2-1422 is § 14.22 of the 1984 Revised Model Business Corporation Act (3d ed.). See comments to OCGA §§ 14-2-101 and 14-2-1422.

[3] The Comment to OCGA § 14-2-1405 contrasts (voluntary) "dissolution proceedings," as that term is used in OCGA §§ 14-2-1404—14-2-1406, and common law dissolution. We find the same contrast between "administrative dissolution" and common law dissolution. Neither voluntary dissolution proceedings under OCGA §§ 14-2-1401—14-2-1409 nor involuntary administrative dissolution under OCGA §§ 14-2-1420—14-2-1423 has "any of the characteristics of common law dissolution, which treated the corporate dissolution as analogous to the death of a natural person and abated lawsuits, vested equitable title to corporate property in the shareholders, imposed the fiduciary duty of trustees on directors who had custody of corporate assets, and revoked the authority of the registered agent." Comment to OCGA § 14-2-1405. When evaluating administrative dissolution statutes that vary widely from state to state, it cannot safely be assumed that the term "dissolution" has any strict meaning independent of the jurisdiction and precise context in which that term is applied. Compare, e.g., Official Comment to Model Act § 14.05 and cases digested in West's Words & Phrases, "Dissolution."

reinstated under OCGA § 14-2-1422. Personal liability therefore may not be based on the traditional theory that Reeves was acting for a nonexistent principal. See OCGA § 10-6-89; *Don Swann Sales Corp. v. Echols*, 160 Ga. App. 539 (287 SE2d 577) (1981). Compare *Goodwyne v. Moore*, 170 Ga. App. 305 (316 SE2d 601) (1984).

It does not appear, based upon our reading of the relevant Code sections and comments, that there exists any basis for imposing liability on Reeves for May Fresh's ultra vires activities. We note that "[t]he powers of a corporation under the Code exist independently of whether a corporation has a broad or narrow purpose clause." Official Comment, Model Act, § 3.02. By analogy, such powers as are outlined in OCGA § 14-2-302 also exist independently of the purpose for continued existence stated in OCGA § 14-2-1421 (c). May Fresh had the power, though no legally authorized purpose, to purchase supplies from Fulton Paper Company in furtherance of its normal course of business. Fulton Paper Company cannot maintain an action against Reeves personally for the debt on the May Fresh account based *solely* on the ground that the acts of May Fresh in question were ultra vires. See generally OCGA § 14-2-304.[4]

At all times Fulton Paper Company dealt with May Fresh as a corporate entity and expected that it could look only to May Fresh for payment on the open account bearing May Fresh's name. No fraud by Reeves has been demonstrated or alleged. Fulton Paper Company strongly argues that reinstatement should not affect its right to recover from Reeves individually, but fails to establish persuasively the existence of that right in the first instance.[5] For a dis-

---

[4] Any corporation that persists in exceeding or abusing "the authority conferred on it by law" may be *judicially* dissolved in a proceeding brought by the Attorney General in the superior court. OCGA §§ 14-2-1430 (1) (B); 14-2-304 (b) (3). It would therefore appear that if the State finds the continued operation of corporations like May Fresh after administrative dissolution to be a matter of public concern, it is not without means to address the problem in a manner far more thorough and effective than the laissez-faire procedure employed for administrative dissolution in the first instance. See OCGA § 14-2-1433. The Official Comment to Model Act § 14.20 explains the rationale for nonjudicial administrative dissolution: "The experience in most states has been that administrative dissolution, or the threat thereof, is an effective enforcement mechanism for a variety of statutory obligations. Judicial dissolution is inappropriate for many of these violations because of its cost and the diversion of limited legal resources, particularly since most violations reflect the abandonment of the corporation by its owners. The advantages of administrative dissolution are compelling: it not only reduces the number of records maintained by the secretary of state, but also avoids further wasteful attempts to compel compliance by the abandoned corporations and returns the corporate name promptly to the status of available names." Moreover, the Georgia Supreme Court has determined that if local corporations like May Fresh are not reinstated within two years after administrative dissolution, they cease to exist for any purpose. See *The Gas Pump v. Gen. Cinema Beverages, supra.*

[5] Fulton Paper Company argues that the reasoning of *Poritzky v. Wachtel*, 27 NYS2d 316 (1941), a case which at first blush appears similar to the present case, should be followed. However, *Poritzky* does not address the theory upon which liability is based, but instead

cussion of proper grounds for piercing the corporate veil, see generally *Amason v. Whitehead*, 186 Ga. App. 320 (367 SE2d 107) (1988).

May Fresh continued to exist as an entity with the power to contract at the time the debts in question were incurred by it, and no other legitimate basis for imposing liability on Reeves has been proposed. The trial court therefore did not err in granting summary judgment to Reeves. Since we find May Fresh's reinstatement to be immaterial to our conclusion, and since a summary judgment right for any reason must be affirmed, we do not reach the issue specifically addressed in Fulton Paper Company's enumeration of error. *Barnes v. Government Employees Ins. Co.*, 142 Ga. App. 377, 379 (1) (236 SE2d 9) (1977).

*Judgment affirmed in Case No. A93A1835. Cooper, J., concurs. Beasley, P. J., concurs in the judgment only. Appeal dismissed in Case No. A93A1836. Beasley, P. J., and Cooper, J., concur.*

DECIDED MARCH 8, 1994.

*Marshall H. Lichtenstein*, for appellant.
*Kris K. Skaar*, for appellee.

---

discusses only what effect reinstatement should have on that liability. It appears that the defendant in that case was acting on behalf of a principal that simply did not legally exist upon its dissolution. Cf. OCGA § 10-6-89. No similar basis for imposing liability on Reeves is present in this case.