## A06A0709. MILK v. TOTAL PAY AND HR SOLUTIONS, INC.
(634 SE2d 208)

BERNES, Judge.

Joseph Milk appeals from the trial court's order granting summary judgment to Total Pay and HR Solutions, Inc. ("Total Pay") on its claims against him for money owed on a payroll services contract. On appeal, Milk asserts that the grant of summary judgment was improper because there were genuine issues of material fact over whether he could be held personally liable for the debt incurred by Burrito Joe's Holding, LLC ("Burrito Joe's"). We agree with Milk and reverse.

On appeal from the grant of summary judgment, we conduct a de novo review of the law and the evidence. *Crisler v. Farber*, 258 Ga. App. 456, 458 (1) (574 SE2d 577) (2002). "When ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion." Id. at 457 (1). See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed in this light, the record reflects that on March 31, 2003, Burrito Joe's was duly organized as a Georgia limited liability company ("LLC") with appellant Milk as the sole managing member. The LLC was formed after Milk and several other individuals decided to open a fast-food Mexican restaurant in Canton. The group agreed that Milk would provide the initial financing, while two other individuals, Jay McGhee and Frank Struck, would manage the restaurant without compensation with the goal of eventually becoming LLC members who would be entitled to financial distributions, if the restaurant was successful.[1] In light of these understandings, Milk, McGhee, and Struck never received any wages or salaries from the restaurant.

---

[1] Another individual participated in the initial discussions regarding the LLC, provided additional financing, and assisted in the physical construction of the restaurant facility. But,.it

Prior to the opening, the decision was made to use a payroll service for paying all employees hired by the restaurant. In June 2003, Struck signed a "Client Service Agreement" on behalf of Burrito Joe's with appellee Total Pay, which agreed to perform the payroll services. In return, Burrito Joe's was required to pay an administrative fee and provide funds for all payroll amounts, workers' compensation insurance premiums, and taxes that would be paid out each weekly pay period.

Burrito Joe's opened for business in July 2003 with several employees. However, the restaurant never operated at a profit, experienced mounting financial difficulties, and ultimately closed in September 2003.

After the restaurant closed, Total Pay commenced the present lawsuit against Burrito Joe's and Milk personally, seeking damages for the payroll services rendered to Burrito Joe's under the Client Service Agreement for which Total Pay was never paid. Burrito Joe's and Milk timely answered and denied liability under the subject agreement.

Following a discovery dispute between Total Pay and Burrito Joe's, the trial court entered an order compelling Burrito Joe's to produce certain business documents and respond to several interrogatories. When Burrito Joe's failed to comply with the order, Total Pay moved for sanctions, asking the trial court to strike Burrito Joe's answer and enter default judgment against the company. After conducting a hearing in which Burrito Joe's agreed to the imposition of the requested sanctions, the trial court entered an order striking Burrito Joe's answer and entering a default judgment against it.

Total Pay subsequently moved for summary judgment against Milk personally, claiming that there was no genuine issue of material fact over whether he could be held individually liable for the debt owed for the payroll services rendered to Burrito Joe's. Proceeding pro se, Milk filed a one-page response denying that Total Pay was entitled to summary judgment. Thereafter, the trial court entered its order granting summary judgment to Total Pay.

After reviewing the record and arguments of the parties, we conclude that Total Pay failed to establish that it was entitled to summary judgment against Milk personally. As an initial matter, we note that, contrary to Total Pay's suggestion, summary judgment was not authorized merely because Milk filed a one-page response that contained no substantive argument and failed to comply with Uniform Superior Court Rule 6.5. "[T]here is no such thing as a 'default

is unclear from the record if there was any understanding over whether he would eventually become an LLC member.

summary judgment.' By failing to respond to a motion for summary judgment, a party merely waives his right to present evidence in opposition to the motion.[2] It does not automatically follow that the motion should be granted." (Citations and punctuation omitted.) *Hughes v. Montgomery Contracting Co.*, 189 Ga. App. 814, 815 (377 SE2d 723) (1989). The burden remains "on the movant to show that there is no genuine issue of material fact and that [it] is entitled to judgment as a matter of law." (Citation and punctuation omitted.) *Crisler*, 258 Ga. App. at 458 (2). Thus, irrespective of Milk's response, Total Pay still carried the burden of showing that there was no genuine issue of material fact over whether Milk could be held personally liable for money owed on the Client Service Agreement and that it was entitled to judgment as a matter of law on this issue. See *Nat Katz & Assoc. v. Barber*, 255 Ga. App. 207, 210 (2) (564 SE2d 802) (2002). This, Total Pay has failed to do.

The record reflects that articles of organization for Burrito Joe's Holding, LLC were filed by the Georgia Secretary of State on March 31, 2003, which served as conclusive proof that all conditions for formation of the LLC had been satisfied. See OCGA § 14-11-203 (d). Accordingly, Burrito Joe's legal existence as a Georgia LLC began on that date. See OCGA §§ 14-11-203 (c), (d); 14-11-206 (e). In turn, the June 2003 Client Services Agreement specifying the payroll services to be provided by Total Pay states that "[t]his Agreement is made by and between Total Pay . . . and Burrito Joe's." Milk's signature appears nowhere on the agreement, either in his capacity as managing member of Burrito Joe's or in his personal capacity. Nor is there any evidence in the record that Milk ever executed a note individually guaranteeing payment for the payroll services.

Without more in the record, Milk clearly could not be held personally liable for the debt owed by Burrito Joe's to Total Pay under the Client Service Agreement.

> The law of corporations is founded on the legal principle that each corporation is a separate entity, distinct and apart from its stockholders. We have long recognized that great caution should be exercised by the court in disregarding the corporate entity. And a member of a limited liability company similarly is considered separate from the company and is not a proper party to a proceeding by or against a limited liability company, solely by reason of being a member of the

---

[2] We nevertheless note that we specifically disapprove of such a practice. Litigants should assist the trial court in its resolution of the issues.

limited liability company, except in the case of actions by the member or derivative actions.

(Citations and punctuation omitted.) *Yukon Partners v. Lodge Keeper Group*, 258 Ga. App. 1, 5-6 (572 SE2d 647) (2002). See also OCGA § 14-11-303.

Total Pay raises several arguments for why it could seek payment of the debt from Milk. Total Pay first contends that summary judgment against Milk was authorized because Burrito Joe's dissolved before an operating agreement for the LLC was ever executed. But, the record contains an operating agreement dated July 1, 2003 that was signed by Milk, and during his deposition Milk denied that Burrito Joe's had ever been dissolved. Nevertheless, Total Pay relies upon an admission made by Burrito Joe's in its Responses to Plaintiff's Request for Admissions that "the LLC dissolved before an operating agreement was executed," which Total Pay claims constitutes a nonrebuttable judicial admission binding upon Milk.[3]

"It is true that . . . facts admitted via requests for admission are 'judicial admissions,' which are conclusive unless withdrawal is permitted by the trial court. But the question presented here is whether such admissions by one defendant are binding on another defendant." (Footnote omitted.) *Batchelor v. State Farm &c. Ins. Co.*, 240 Ga. App. 366, 367 (526 SE2d 68) (1999). Under Georgia law, admissions made by one defendant in a civil case are not binding on a co-defendant "unless and until a joint interest is proven by other independent evidence." *Mountain Bound v. Alliant FoodService*, 242 Ga. App. 557, 558 (2) (530 SE2d 272) (2000). See OCGA § 24-3-31 (2); *Batchelor*, 240 Ga. App. at 367; *Kirk v. Barnes*, 147 Ga. App. 423, 423-424 (1) (249 SE2d 140) (1978).

No joint interest exists between Burrito Joe's and Milk under the circumstances of this case. Burrito Joe's is an insolvent company that voluntarily agreed to entry of a default judgment against it. In contrast, Milk has continued to litigate this matter in his individual capacity and has different legal bases for denying liability than Burrito Joe's, including that the contract at issue was between two business entities separate and distinct from himself. Furthermore, treating the admissions of the LLC as binding on Milk personally

---

[3] In a related argument, Total Pay contends that summary judgment was authorized against Milk personally because of the default judgment entered against Burrito Joe's. "A defendant in default is in the position of having admitted each and every material allegation of the plaintiff's petition except as to the amount of damages alleged." (Citation and punctuation omitted.) *Hope Elec. Enterprises v. Proforce Staffing*, 268 Ga. App. 302, 303 (2) (601 SE2d 723) (2004). For the same reasons discussed infra, Milk is not bound by any admissions deemed to have been made by Burrito Joe's as a result of the default.

would undermine the longstanding principle that officers and shareholders are not personally liable for corporate acts (a principle equally applicable in the LLC context), until such time as the corporate veil has been successfully pierced. See *Bonner v. Brunson*, 262 Ga. App. 521, 521-522 (585 SE2d 917) (2003); *Yukon Partners*, 258 Ga. App. at 5-6. Accordingly, we conclude that the interests of Burrito Joe's and Milk in this litigation are not so joint and coextensive as to justify treating the judicial admissions of the former as binding on the latter. See *Mountain Bound*, 242 Ga. App. at 558-559 (2) (judicial admissions of defendant corporate officer who allegedly guaranteed debt of corporation not binding on defendant corporation in suit on the debt).[4]

Total Pay next contends that summary judgment was authorized because Milk undercapitalized Burrito Joe's and therefore was no longer protected by the "veil" of a separately maintained LLC. "Just as the so-called 'corporate veil' protects an individual shareholder of a corporation from personal liability for the debts of the separate corporate entity (so long as the corporate forms are maintained)[,] so is a member of a [LLC] 'veiled' from personal liability for the debts of the separately maintained LLC entity." *Bonner*, 262 Ga. App. at 521. For undercapitalization to justify piercing the veil, "it must be coupled with evidence of an intent at the time of the capitalization to improperly avoid future debts of the [LLC]." (Punctuation and footnote omitted.) *Boswell v. Primary Care Professionals*, 265 Ga. App. 522, 525-526 (594 SE2d 725) (2004).

There is a lack of evidence of such intent in the present case. While Total Pay contends that a $20,000 check written out to cash conclusively shows that Milk withdrew "working capital for personal use so that the business would not have sufficient funds to pay creditors," there is no evidence in the record whatsoever that the withdrawn money was used for such a purpose. In fact, the check is

---

[4] Even if the judicial admission of Burrito Joe's bound Milk individually, Total Pay still would not be entitled to summary judgment. Dissolution, standing alone, does not cause a LLC to cease to exist as a legal entity separate from its members or automatically render members personally liable for LLC debts. See OCGA §§ 14-11-602 to 14-11-611 (discussing process of dissolution, winding up, and termination of a LLC). Cf. OCGA § 14-2-1405 cmt. ("[D]issolution proceedings do not have any of the characteristics of common law dissolution, which treated the corporate dissolution as analogous to the death of a natural person and abated lawsuits, vested equitable title to corporate property in the shareholders, imposed the fiduciary duty of trustees on directors who had custody of corporate assets, and revoked the authority of the registered agent."); *Fulton Paper Co. v. Reeves*, 212 Ga. App. 314, 315-318 (2) (441 SE2d 881) (1994) (physical precedent only) (corporate officer could not be held personally liable for debt when corporation continued to exist as a corporate entity after administrative dissolution). Additionally, the formation of a LLC as a legal entity separate from its members is predicated on the public filing of the LLC's articles of organization, not on whether or when an operating agreement is executed. See OCGA §§ 14-11-203 (c), (d); 14-11-206 (e).

dated April 30, 2003, before the debt to Total Pay was even incurred, the memo portion of the check denotes "equipment," and the amount withdrawn matches the amount McGhee testified was spent on equipment for the restaurant.

In a further effort to show that funds were purposefully and wrongfully diverted from Burrito Joe's to avoid paying the payroll services debt, Total Pay relies upon a one-page correspondence from McGhee to Milk in which McGhee suggested that the restaurant's limited funds be used to pay the current payroll of the restaurant's employees rather than to pay off past debt owed to Total Pay. However, as previously noted, veil-piercing based on undercapitalization requires an improper "intent *at the time of the capitalization* to improperly avoid *future* debts." (Punctuation and footnote omitted; emphasis supplied.) *Boswell*, 265 Ga. App. at 525-526.[5] Moreover, there is no evidence showing that these payments to employees were anything other than legitimate business expenses, or that the payments were even made. Accordingly, Total Pay has failed to show that it was entitled to pierce the veil of the separately maintained Burrito Joe's in order to impose personal liability upon Milk. See *Fuda v. Kroen*, 204 Ga. App. 836, 838 (1) (420 SE2d 767) (1992) (veil could not be pierced when plaintiff failed to establish that withdrawal of corporate funds "were not legitimate business expenses or authorized by the corporation as part of . . . [legitimate] compensation packages"). Compare *Stein v. Cherokee Ins. Co.*, 169 Ga. App. 1, 3 (4) (311 SE2d 220) (1983); *Sheppard v. Tribble Heating & Air Conditioning*, 163 Ga. App. 732, 732-733 (1) (294 SE2d 572) (1982).

Finally, Total Pay argues that Milk can be held personally liable because he participated in fraud committed by Burrito Joe's.[6] A LLC member may be held individually liable if he or she personally participates or cooperates in a tort committed by the LLC or directs it to be done. See *BTL COM v. Vachon*, 278 Ga. App. 256, 260 (1) (628 SE2d 690) (2006); *Smith v. Hawks*, 182 Ga. App. 379, 385 (4) (355 SE2d 669) (1987). In support of its fraud claim, Total Pay relies upon the same evidence discussed supra, none of which establishes fraud as a matter of law by Burrito Joe's or Milk. As such, Total Pay was not entitled to summary judgment on this ground.

---

[5] For the same reason, Total Pay cannot rely upon McGhee's deposition testimony in which he discussed how Milk declined to make additional financial contributions to the restaurant *after* it was clear that the restaurant was not making a profit and had incurred substantial debt.

[6] Total Pay further contends that Milk can be held personally liable because he participated in acts of conversion. Because Total Pay has failed to provide any legal argument or citation to the record to support any alleged acts of conversion, we conclude that it has abandoned this argument on appeal. *Wilson v. 72 Riverside Investments*, 277 Ga. App. 312, 314 (3) (626 SE2d 521) (2006).

For these reasons, Total Pay failed to carry its burden of proving that there was no genuine issue of material fact, and that it was entitled to judgment as a matter of law, regarding whether Milk could be held personally liable for the payroll services debt. Thus, the trial court erred in granting summary judgment to Total Pay.

*Judgment reversed. Andrews, P. J., and Barnes, J., concur.*

DECIDED JULY 12, 2006.

*Flint & Connolly, John F. Connolly*, for appellant.
*Berger & Loewenthal, Gordon M. Berger*, for appellee.