728 S.E.2d 448

16 JADE STREET, LLC, Respondent/Appellant,

v.

R. DESIGN CONSTRUCTION CO., LLC, and Carl R. Aten, Jr., Individually and in his capacity as principal and agent of R. Design Construction Co., LLC, Catterson & Sons Construction and Michael S. Catterson, Individually and in his capacity as principal and agent of Catterson & Sons Construction, Defendants,

Of whom, Carl R. Aten, Jr., is Appellant,

and

Michael S. Catterson, Individually and in his capacity as principal and agent of Catterson & Sons Construction, is Respondent,

R. Design Construction Co., LLC, Third Party Plaintiffs,

v.

Kintz Electric, Third Party Defendant.

No. 27107.

Supreme Court of South Carolina.

Heard Oct. 4, 2011.

Decided April 4, 2012.

Mary Bass Lohr, Thomas A. Bendle, and William T. Young, III, all of Howell Gibson & Hughes, of Beaufort, for Appellant.

Jeffrey A. Ross, of Clawson & Staubes, of Charleston, for Respondent.

E. Mitchell Griffith and Michael D. Freeman, both of Griffith, Sadler & Sharp, of Beaufort, for Respondent–Appellant.

Justice HEARN.

This case presents the novel question of whether a member of a limited liability company can be held personally liable for torts committed while acting in furtherance of the company's business. We hold the General Assembly did not intend the LLC act to shield a member from liability for his own torts.

## FACTUAL/PROCEDURAL BACKGROUND

Carl R. Aten, Jr., and his wife are the only members of R. Design Construction Co., LLC. R. Design's primary business is building houses for spec, and Aten holds a residential home builder's license. In this particular case, R. Design selected a lot in Beaufort, South Carolina, on which it planned to build a four-unit condominium project. When Aten could not secure the necessary financing, he approached Dennis Green about entering into a contract for R. Design to construct the building. Green ultimately formed 16 Jade Street, LLC for this purpose, and R. Design entered into an agreement with Jade Street for the construction of the condominium.

As part of the deal, Aten was to receive a $150,000 fee to serve as the general contractor for the project, and he alone was in charge of choosing subcontractors. One of the subcontractors selected by R. Design was Catterson & Sons Construction. Michael Catterson is the sole shareholder of Catterson & Sons, and he is a specialty subcontractor with a special license for framing in addition to holding his general contractor's license. Catterson & Sons' scope of work accordingly was focused primarily on framing and AAC block [1] installation.

As the general contractor, it was Aten's job to supervise the project. Thus, whenever Catterson had a question about the work he was to perform or any issues that arose, he would ask Aten. Furthermore, Catterson & Sons was to implement the design standards set by Aten and R. Design. Catterson himself, however, did not actually perform any construction but served mainly as the liaison between the foreman and his own workers.

A couple months into construction, problems arose concerning the AAC block construction and the framing. Green called Kern–Coleman, the structural engineer of record, to perform an inspection of the property. The initial inspection identified four defects, but Green pressed on following Aten's assurances that these problems would be addressed. However, the problems did not abate. Following a progress payment dispute, Catterson & Sons left the job site and did not return. In the ensuing months, Aten's relationship with Green deteriorated as Aten tarried in fixing the defects, and the construction eventually ground to a halt. R. Design subsequently left the project, never replacing Catterson & Sons nor adequately addressing the defects.

The day after R. Design left the project, Kern–Coleman conducted another inspection of the property. This time, it identified thirty-four defects in addition to the original four, which had not yet been remedied, for a total of thirty-eight. Anchor Construction was retained as the new general contrac-

---

1. AAC block stands for aerated autoclave concrete block. These blocks are preformed concrete blocks with cavities that, when stacked, permit rebar and grouting mortar to be poured in and provide structural support.

tor, and its own inspection revealed sixty defects in the original construction. After Anchor began working on the project, more defects surfaced.

Jade Street subsequently sued R. Design, Aten, Catterson & Sons, and Catterson for negligence [2] and breach of implied warranties. Jade Street also filed a breach of contract claim against R. Design and Aten.[3] Following a bench trial, the circuit court found in favor of Jade Street as follows: (1) against R. Design for breach of contract, negligence, and breach of implied warranties; (2) against Catterson & Sons for negligence and breach of contract; and (3) against Aten personally for negligence. As to Aten personally, the circuit court concluded that despite the fact he was a member of an LLC, he is personally liable because he holds a residential home builder's license. In particular, the court concluded the statutes pertaining to the license create civil liability for the licensee. The court imposed no liability against Catterson himself. The court ultimately awarded Jade Street $925,556 in damages for its claims. This appeal followed.

## ISSUES PRESENTED

I. Did the circuit court err in finding Aten can be held personally liable for negligent acts he committed while working for an LLC of which he was a member?

II. Did the circuit court err in not finding Catterson personally liable for the tort obligations incurred by Catterson & Sons?

## LAW/ANALYSIS

### I. ATEN'S PERSONAL LIABILITY

Aten argues the provisions of the Uniform Limited Liability Company Act, as enacted in South Carolina, shield him from personal liability for ordinary negligence he committed while

---

2. The negligence claim against Aten and R. Design was an ordinary construction defect claim coupled with negligent supervision.

3. R. Design brought cross-claims against Catterson and Catterson & Sons for equitable indemnity and breach of contract. Aten also filed a third-party complaint against Kintz Electric, an electrical subcontractor. Issues relating to these claims are not raised on appeal.

working for R. Design. While we agree the language of the LLC act appears to insulate a member from personal liability, we hold that such a sweeping liability shield was not intended by the General Assembly.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). Where the words in the statute are clear and unambiguous, we cannot give them a different meaning. *Id.* If the statute is in derogation of a common law right, it "must be strictly construed and not extended in application beyond clear legislative intent. Therefore, a statute is not to be construed in derogation of common law rights if another interpretation is reasonable." *Doe v. Marion*, 361 S.C. 463, 473, 605 S.E.2d 556, 561 (Ct.App.2004). However, the statute must also be read as a whole and in harmony with its purpose. *State v. Sweat*, 386 S.C. 339, 350, 688 S.E.2d 569, 575 (2010). In that vein, "[a] statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers." *Browning v. Hartvigsen*, 307 S.C. 122, 125, 414 S.E.2d 115, 117 (1992). Similarly, we are to construe a statute so "that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous." *In re Decker*, 322 S.C. 215, 219, 471 S.E.2d 462, 463 (1995). In the end, however, we will reject any interpretation which would lead to a result so absurd that the General Assembly could not have intended it. *Sweat*, 386 S.C. at 351, 688 S.E.2d at 575.

The statute at issue in this case is Section 33–44–303 of the South Carolina Code (2006), which reads as follows:

(a) Except as otherwise provided in subsection (c), the debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company. A member or manager is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager.

(b) The failure of a limited liability company to observe the usual company formalities or requirements relating to the exercise of its company powers or management of its busi-

ness is not a ground for imposing personal liability on the members or managers for liabilities of the company.

(c) All or specified members of a limited liability company are liable in their capacity as members for all or specified debts, obligations, or liabilities of the company if:

(1) a provision to that effect is contained in the articles of organization; and

(2) a member so liable has consented in writing to the adoption of the provision or to be bound by the provision.[4]

The record before us does not contain the articles of organization for R. Design, so we are unable to determine whether subsection (c) would impose liability on Aten. The question thus becomes whether the General Assembly intended subsection (a) to generally shield members from personal liability for acts they commit in furtherance of the company's business.

This is a question of first impression in this State. We note that a majority of states to examine similar statutory language have concluded that a member is always liable for his own torts and cannot rely on his status as a member of an LLC as a shield.[5] *See, e.g., Hoang v. Arbess*, 80 P.3d 863, 867 (Colo. App.2003); *Ventres v. Goodspeed Airport, LLC*, 275 Conn. 105, 881 A.2d 937, 963–64 (2005); *Milk v. Total Pay & HR Solutions, Inc.*, 280 Ga.App. 449, 634 S.E.2d 208, 213 (2006); *Allen v. Dackman*, 413 Md. 132, 991 A.2d 1216, 1228–29 (2010); *Rothstein v. Equity Ventures, LLC*, 299 A.D.2d 472, 750 N.Y.S.2d 625, 627 (2002); *d'Elia v. Rice Dev., Inc.*, 147 P.3d 515, 525 (Utah Ct.App.2006). Additionally, many scholars opine that LLC statutes do not insulate a member from

---

**4.** Prior to the adoption of the Uniform Limited Liability Act in 1996, South Carolina had a statutory scheme governing LLCs which specifically preserved the personal liability of individual members who committed tortious conduct pursuant to a professional licensing statute. *See* S.C.Code Ann. § 33–43–304(B) (repealed 1996).

**5.** Some courts which have found personal liability have done so based on substantially different language in their LLC statutes. For example, in *Estate of Countryman v. Farmers Cooperative Ass'n*, 679 N.W.2d 598 (Iowa 2004), the Supreme Court of Iowa held a member was personally liable for his torts. *Id.* at 605. However, Iowa's LLC statute at the time specifically stated, "Nothing in this section shall be construed to affect the liability of a member of a limited liability company to third parties for the member's participation in tortious conduct." Iowa Code § 490A.603(3) (2004) (repealed 2009).

tort liability primarily due to the common law concept that one is always liable for his torts. *See* Matthew G. Doré, *What, Me Worry? Tort Liability Risks for Participants in LLCs*, 11 U.C. Davis Bus. L.J. 267, 271 (2011); Karin Schwindt, *Limited Liability Companies: Issues in Member Liability*, 44 UCLA L.Rev. 1541, 1548 (1997); Jeffrey K. Vandervoot, *Piercing the Veil of Limited Liability Companies: The Need for a Better Standard*, 3 DePaul Bus. & Com. L.J. 51, 56 (2004). In their view, the liability shield erected is one against vicarious liability for non-tortfeasor members, such as Aten's wife in this case. *See* Doré, *supra*, at 285–86. No party in this matter contends that section 33–44–303 does not at least provide this cover.

On the other hand, a few courts appear to have concluded that their states' LLC statutes do shield a member from personal liability for at least some of his own tortious conduct. *See, e.g., Puleo v. Topel*, 368 Ill.App.3d 63, 306 Ill.Dec. 57, 856 N.E.2d 1152, 1157 (2006); *Barone v. Perkins*, No.2007–CA–000838–MR, 2008 WL 2468792, at *4 (Ky.Ct.App.2008) (unpublished); *Curole v. Ochsner Clinic, L.L.C.*, 811 So.2d 92, 97 (La.Ct.App.2002); *Brew City Redev. Grp., LLC v. The Ferchill Grp.*, 289 Wis.2d 795, 714 N.W.2d 582, 590–91 (Ct.App.2006); *see also* Jeffrey S. Quinn, Allen v. Dackman: *Doing Away with Limited Liability in Maryland*, 70 Md. L.Rev. 1171, 1210 (2011) (stating that the *Allen* court "mistakenly disregarded the economically important liability shield of an LLC by inappropriately making Dackman personally liable for what is essentially the tortious conduct of the LLC").

■ We begin our analysis by examining the plain language of section 33–44–303(a) and the intent of our General Assembly with respect to the common law right to sue one's tortfeasor. We acknowledge that the statute's language may be read to shield a member from personal liability for torts he commits in furtherance of the LLC's business. Although Section 33–44–201 of the South Carolina Code (2006) provides that an LLC and its members are separate entities, because an LLC is a fictional person it can only operate through its agents, who oftentimes are its members. Accordingly, any debt, obligation, or liability the LLC incurs can only arise from the actions of an agent. Using R. Design as an example, if it incurs a tort liability, it can only be through a tort committed

by Aten or his wife, assuming the LLC has no other employees or agents. Section 33–44–303(a) states that a member or manager is not personally liable for these obligations "solely by reason of being or acting as a member or manager."[6] This is the source of the protection against vicarious liability, meaning Aten's wife would not be personally liable for Aten's negligence—which is an LLC obligation—just because she happens to be a member of R. Design.

Additionally, section 33–44–303(a) provides that these obligations are "solely" those of the company. Because R. Design could only incur a tort obligation through a tort committed by Aten or his wife, this language suggests R. Design alone is responsible for torts committed by Aten in the course of the company's business.[7] *Accord* S.C.Code Ann. § 33–44–301(a)(2) ("An act of a member which is not apparently for carrying on in the ordinary course of the company's business or business of the kind carried on by the company binds the company *only* if the act was authorized by the other members." (emphasis added)); *id.* § 33–44–301(b)(2) ("An act of a manager which is not apparently for carrying on in the

---

6. Some of the courts espousing the majority rule with statutes similar to ours focus on this use of the word "solely" in the statute. *See, e.g., Allen,* 413 Md. at 154, 991 A.2d at 1229 (citing Md. Code Ann., Corps. & Ann'ns § 4A–301). Their logic is that finding a member liable for a tort he commits while working for the company is imposing liability because he was the actual tortfeasor, not *solely* because he is a member. *Id.* Were this all the statute provided, we would be inclined to agree. However, as discussed below, the statute also makes the company (and not any member) exclusively liable for certain tort obligations. Thus, the statute on its face appears to limit a member's personal liability for torts he commits.

7. Subsection (c) provides further support for the notion that section 33–44–303's liability shield is more than just a protection against vicarious liability. In particular, it states a member obligates himself to pay for such LLC debts when there is a provision so providing in the articles of organization and the member expressly has agreed to be bound by it. S.C.Code Ann. § 33–44–303(c). Because the statute expressly provides how a member can become personally liable, it therefore stands to reason that the general rule is he is not otherwise personally liable. *See also Hodges,* 341 S.C. at 86, 533 S.E.2d at 582 ("The canon of construction *'expressio unius est exclusio alterius'* or *'inclusio unius est exclusio alterius'* holds that 'to express or include one thing implies the exclusion of another, or of the alternative.' " (quoting Black's Law Dictionary 602 (7th ed.1999))).

ordinary course of the company's business or business of the kind carried on by the company binds the company *only* if the act was authorized under Section 33–44–404." (emphasis added)). Thus, section 33–44–303(a) arguably insulates a member from personal liability in these situations.

Nevertheless, the right to sue one's tortfeasor is a long-standing right in our legal system, and we will only find it abrogated by statute through "clear legislative intent." *See Doe,* 361 S.C. at 473, 605 S.E.2d at 561. Stated differently, "[s]tatutes will not be held in derogation of the common law unless the statute itself shows that such was the object and intention of the lawmakers, and the common law will not be changed by doubtful implication." 82 C.J.S. *Statutes* § 534. "Therefore, a statute is not to be construed in derogation of common law rights if another interpretation is reasonable." *Doe,* 361 S.C. at 473, 605 S.E.2d at 561. While construing section 33–44–303 to limit personal liability may be a permissible reading of the statute, we are not persuaded that this was the intent of the General Assembly. First, it is the interpretation afforded to similar language by a majority of courts and reflects the prevailing interpretation of an LLC's limitation of liability. *See Hoang,* 80 P.3d at 867; *Ventres,* 275 Conn. at 143–47, 881 A.2d at 963–64; *Milk,* 280 Ga.App. at 454, 634 S.E.2d at 213; *Allen,* 413 Md. at 152–55, 991 A.2d at 1228–29; *Rothstein,* 299 A.D.2d at 474, 750 N.Y.S.2d at 627; *d'Elia,* 147 P.3d at 525; Doré, *supra,* at 271; Schwindt, *supra,* at 1548; Vandervoot, *supra,* at 56. Furthermore, it comports with the comments to section 33–44–303 [8] and section 33–44–303's kin in the Revised Limited Liability Company Act.[9]

---

8. The comments provide, "A member or manager, as an agent of the company, is not liable for the debts, obligations, and liabilities of the company simply because of the agency. A member or manager is responsible for acts or omissions to the extent those acts or omissions would be actionable in ... tort against the member or manager if that person were acting in an individual capacity." S.C.Code Ann. § 33–44–303 cmt. We believe this is evidence of the General Assembly's intent that he should be liable for his torts.

9. These comments similarly note that nothing in the current version of the provision under scrutiny in this case was intended to ameliorate the common law principle that a tortfeasor is always responsible for his own tortious conduct. Revised Unif. Lim. Liab. Co. Act § 304 cmt. ("This paragraph shields members and managers only against the debts, obligations and liabilities of the limited liability company and is

More importantly, this also has long been the rule with respect to shareholders and officers of corporations, an organizational structure from which LLCs borrow heavily. *See* S.C.Code Ann. § 33–6–220(b) ("[A] shareholder of a corporation is not personally liable for the acts or debts of the corporation except that he may become personally liable by reason of his own acts or conduct."); *see also Hoang*, 80 P.3d at 867 (stating parties did not dispute that corporate liability principles apply to LLCs); *Ventres*, 275 Conn. at 145, 881 A.2d at 964 (holding that Connecticut's LLC statute "merely codifies" established liability principles of corporate law); *Allen*, 413 Md. at 152, 991 A.2d at 1228 (applying general liability rule from corporations to LLCs); *d'Elia*, 147 P.3d at 525 ("We are persuaded by those authorities that hold that both limited liability members and corporate officers should be treated in a similar manner when they are engaged in tortious conduct."). Indeed, Judge Posner once observed, "You don't buy immunity from suits for your torts by being a member of a business corporation." *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix, & von Gontard, P.C.*, 385 F.3d 737, 744 (7th Cir.2004). We can find no evidence the General Assembly intended to abandon this rule with respect to LLCs.

At first blush, this appears to strip away one of the main reasons why a person chooses to form an LLC. *See* Quinn, *supra*, at 1216 ("The economic justifications and, specifically, the concept of limited liability support an interpretation of the [LLC act] that protects members from personal liability when acting in good faith service of the LLC."). Our concern with concluding section 33–44–303(a) only protects against vicarious liability for torts of others becomes particularly acute with respect to single-member LLCs which have no other employees. In one of these single-member LLCs, there simply is no one to protect from vicarious liability as one cannot be vicariously liable for his own actions. However, there are myriad other benefits available to those who choose to form an LLC, and we are not persuaded that limiting the shield of section

---

irrelevant to claims seeking to hold a member or manager directly liable on account of the member's or manager's own conduct."). Importantly, this provision is nearly identical to section 33–44–303; the only substantive difference is that there is no equivalent to subsection (c).

33–44–303(a) to just vicarious liability would undermine the core of this business entity. Accordingly, we find this interpretation reasonable and no clear intent by the General Assembly to restrict the common law. While the language of the statute may be subject to other interpretations, we believe it is highly questionable whether the General Assembly intended to limit a member's personal liability for his torts. Therefore, given the principle that we strictly construe statutes in derogation of common law rights and they only do so through clear legislative intent, we hold section 33–44–303(a) does not limit the right of a plaintiff to sue his tortfeasor.

■ In sum, we conclude that section 33–44–303(a) only protects non-tortfeasor members from vicarious liability and does not insulate the tortfeasor himself from personal liability for his actions. We accordingly find the circuit court did not err in finding Aten personally liable for torts he committed in furtherance of R. Design's business. We note the circuit court did not reach Aten's argument that section 33–44–303(a) removed any personal liability on his part and instead found Aten's residential home builders' license rendered him personally liable. While we disagree with the circuit court's findings regarding Aten's license, the scope of section 33–44–303 was raised to the trial court and is an additional sustaining ground. *See* Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing the Record on Appeal.").

## II.  CATTERSON'S PERSONAL LIABILITY

Jade Street appeals the circuit court's conclusion that Catterson himself is not personally liable for the actions of Catterson & Sons. We affirm pursuant to Rule 220(b), SCACR, and the following authorities: S.C.Code Ann. § 33–6–220(b) ("[A] shareholder of a corporation is not personally liable for the acts or debts of the corporation except that he may become personally liable by reason of his acts or conduct."); *Aaron v. Mahl*, 381 S.C. 585, 591, 674 S.E.2d 482, 485 (2009) ("In an action at law, tried by a judge without a jury, the findings of the trial court must be affirmed if there is any evidence to support them.").

## CONCLUSION

For the foregoing reasons, we affirm as modified the circuit court's holding that Aten is personally liable for his negligence. We also affirm the court's finding that Catterson is not personally liable for the acts of Catterson & Sons.

PLEICONES and KITTREDGE, JJ., concur.

BEATTY, J., concurring in part and dissenting in part in a separate opinion in which TOAL, C.J., concurs.

Justice BEATTY.

I concur in part. I concur in that part of the majority's opinion that affirms the circuit court's conclusion that Catterson is not personally liable for the actions of Catterson & Sons. However, I am compelled to dissent in that part of the majority's opinion that concludes that Aten is personally liable for torts committed in furtherance of the business of 16 Jade Street, LLC.

The conclusion reached by the majority, though appealing, cannot be reached by use of statutory construction. As the majority recognizes, it is axiomatic that the cornerstone of statutory construction is the ascertainment of the Legislature's intent. It is also axiomatic that where the words of the statute are clear and unambiguous, the court cannot assign them a new and different meaning. Section 33–44–303 states:

(a) Except as otherwise provided in subsection (c), the debts, obligations, and liabilities of a limited liability company, whether arising in contract, **tort**, or otherwise, are solely the debts, obligations, and liabilities of the company. A member or manager is not personally liable for a debt, obligation, or liability of the company solely by reason of being or **acting as a member or manager.**

(b) The failure of a limited liability company to observe the usual company formalities or requirements relating to the exercise of its company powers or management of its business is not a ground for imposing personal liability on the members or managers for liabilities of the company.

(c) All or specified members of a limited liability company are liable in their capacity as members for all or specified debts, obligations, or liabilities of the company if:

(1) a provision to that effect is contained in the articles of organization; and

(2) a member so liable has consented in writing to the adoption of the provision or to be bound by the provision.

S.C.Code Ann. § 33–44–303 (2006) (emphasis added).

This statute is clear and unambiguous and, in my view, is not amenable to an interpretation that a member tortfeasor of an LLC is personally liable for torts committed in the furtherance of the LLC's business. Although we may find fault in the wisdom of the statute, we have no authority to re-write it. *See State v. Jacobs*, 393 S.C. 584, 713 S.E.2d 621 (2011) (recognizing that where a statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning).

Section 33–44–303 is clear and unambiguous; the common law must yield.

TOAL, C.J., concurs.